**POLLUTION CONTROL INDUSTRIES OF AMERICA, INC., a Missouri Corporation, Plaintiff–Appellant,**

v.

**Linda R. VAN GUNDY, Jack J. Genova and Michael J. Genova, Defendants– Appellees.**

No. 93–2259.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1993.

Decided April 4, 1994.

Nathaniel Ruff, Lesniak & Ruff, East Chicago, IN (argued), for Pollution Control Industries of America, Inc.

Randall J. Nye (argued), Larry L. Chubb, Beckman, Kelly & Smith, Hammond, IN, for Linda R. Van Gundy, Jack J. Genova and Michael J. Genova.

Before GIBSON,* KANNE and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

Pollution Control Industries of America ("PCIA") filed this breach of contract action against Linda Van Gundy and Jack and Michael Genova on March 12, 1990.. PCIA, a Missouri corporation with its principal place of business in Indiana, invoked the court's diversity jurisdiction, alleging that all of the defendants were residents of Kansas. (R. 1.)

* The Honorable Floyd R. Gibson of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

On May 4, 1990, the defendants filed a motion to dismiss for lack of personal jurisdiction, arguing that they had insufficient contacts with the state of Indiana to be sued there. (R. 5–6.) The defendants also requested that Fed.R.Civ.P. 11 sanctions be imposed on the plaintiffs for "bring[ing] suit in a plainly improper federal forum." (R. 6.) In attached affidavits, both Jack Genova and Linda Van Gundy attested, *inter alia*, that they were "resident[s] and citizen[s]" of Kansas and that they lived at Kansas addresses. Michael Genova attested as follows:

> I am a resident and citizen of the State of Kansas. My residence address is 404 East 74th Street, Kansas City, *Missouri*.

(R. 5 (emphasis added).) The defendants did not contest the existence of diversity jurisdiction and, in view of their pending motion to dismiss, did not answer PCIA's complaint, which had alleged that Michael Genova was a "resident" of Kansas and that diversity existed.

The district court did not rule on the defendants' motion to dismiss and the parties proceeded with discovery. A bench trial was set for March 4, 1991. The defendants filed a motion for summary judgment on January 29. (R. 32.) At a final pre-trial conference held on February 15, 1991, the court indicated that it was inclined to grant the defendants' motion to dismiss for lack of personal jurisdiction, but did not cancel the March 4 trial date.

On February 19, 1991, PCIA filed a "Suggestion of Lack of Subject Matter Jurisdiction," indicating that complete diversity was lacking because Michael Genova was a "citizen" of Missouri. In particular, PCIA noted:

> During a recent pretrial conference, Defendants' counsel stated that he does not believe that Federal jurisdiction would exist in the District Courts in Kansas or Missouri because of incomplete diversity, since one or more of the Defendants lives in each of these states.

\*       \*       \*       \*       \*       \*

Following this suggestion, Plaintiff's counsel reviewed the deposition[ ] of Michael Genova ... taken January 10, 1991 ... It appears from [this] deposition[ ] that Michael Genova is a citizen of Missouri....

(R. 67, ¶¶ 5–6.) PCIA appended the following excerpt from Genova's January 10, 1991 deposition:

> Q: What is your address?
>
> A: 404 East 74th Street, Kansas City, Missouri, 64131.
>
> Q: Is that where you live?
>
> A: Yes.

(R. 67.) PCIA had apparently failed to notice the same statement in Genova's original affidavit, which had been filed in May 1990. PCIA's "Suggestion" also stated that "[p]laintiff's counsel has discussed the matters raised herein with Defendants' counsel. Michael Genova told Defendants' counsel that he was living in Missouri at the time the complaint was filed." (*Id.* at ¶ 7.)[1]

Finally, on March 15, 1991, the district court dismissed PCIA's complaint, without prejudice, finding that the court lacked personal jurisdiction over the defendants because they did not have sufficient contacts with the state of Indiana. (R. 70.) The court's eighteen page Memorandum Opinion and Order did not mention the issue of subject matter jurisdiction and did not rule on the defendants' request for Rule 11 sanctions. On March 25, the defendants filed a Fed.R.Civ.P. 59(e) motion to alter or amend the March 15 judgment to include an award of attorney's fees and costs under Rule 11. (R. 72.) In line with both their own litigating strategy and with the court's March 15 order, the defendants' motion focused only on the question of personal jurisdiction and did not mention subject matter jurisdiction. In its reply to defendants' motion, however, PCIA did advert to the latter issue, asserting that defendants were responsible for any factual deficiencies in that regard:

> The face of the record shows that the complete diversity between Plaintiff and

---

1. PCIA cited Fed.R.Civ.P. 12(h)(3), which provides:

Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

the Defendants required for subject matter jurisdiction based on diversity of citizenship does not exist in this case. Plaintiff is a citizen both of Missouri, its state of incorporation, and Indiana, its principal place of business, under F.R.C.P. 1332(c). Michael Genova is a resident and a citizen of Missouri, and was so at the time the lawsuit was filed. The Court recognized this fact in its Findings and Order of March 15, 1991. (See also Exhibit A, Defendants' affidavits, and documents submitted with it.) Defendants presented nothing to the Court indicating that Michael Genova's citizenship at the time this lawsuit was filed was different than Missouri.

\* \* \* \* \* \*

Defendants were the parties best placed to determine the incomplete diversity, and thus lack of subject matter jurisdiction, and present this to the Court by a motion to dismiss or otherwise.

(R. 73 ¶¶ 5–6.) Attached as Exhibit A to the reply was a "Petition on a Promissory Note" that had been filed by the Genovas and Van Gundy in a simultaneous state court action between the parties. The petition, dated July 13, 1990, stated:

Michael J. Genova, is a citizen and resident of Kansas City, Jackson County, Missouri ... Jack J. Genova and Linda Van Gundy are citizens and residents of Johnson County, Kansas.

(R. 73 Ex. A.)

The court granted Rule 11 sanctions in a May 15, 1991 order.[2] But, notwithstanding the basis of defendants' motion, the court's sanctions award did not rest on the issue of personal jurisdiction. Instead, the court sanctioned PCIA because of its failure to determine whether diversity existed before filing the action and its failure to promptly dismiss the action upon discovery of the error:

This court finds that had plaintiff's counsel made appropriate inquiry into the facts of this cause of action prior to filing the lawsuit in this district, and in this court, he would have known that this forum was inappropriate. Plaintiff's counsel's claim that the defendants were the appropriate parties to notify this court whether diversity jurisdiction was present is meritless. Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual or legal investigation to ascertain whether *his* claims are actually well-founded in fact and in law.

\* \* \* \* \* \*

As plaintiff's counsel concedes in his reply filed April 2, 1991, the face of the record shows that complete diversity, which is necessary in order for this court to exercise jurisdiction under 28 U.S.C. § 1332(c), does not exist in this case and did not exist at the time this cause of action was filed. Plaintiff's counsel's actions in failing to voluntarily dismiss this cause of action when this information was brought to light only compounds his error in failing to ascertain the existence of diversity jurisdiction before he filed suit. Accordingly, this court will impose sanctions upon plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure and under 28 U.S.C. § 1927, which requires that counsel personally satisfy the award of sanctions.

(R. 78 at 7–8.) The court ordered the defendants to file an affidavit in support of fees and costs, and they did so on May 23, 1991.

PCIA had in the meantime filed a notice of appeal from the district court's March 15 judgment of dismissal, and we heard argument in the case on September 16, 1992, before the district court had entered a final judgment on the sanctions issue. PCIA conceded the propriety of the dismissal, but argued that it should have been based on the lack of subject matter rather than personal jurisdiction. We dismissed the appeal for lack of appellate jurisdiction, finding that PCIA could not appeal a judgment merely in order to contest the lower court's reasoning. *See Pollution Control Indus. of America,*

---

**2.** Although it granted sanctions, the court denied the Rule 59(e) motion to reopen as an inappropriate means of addressing the sanctions issue.

*Inc. v. Van Gundy,* 979 F.2d 1271 (7th Cir. 1992).[3]

On April 26, 1993, the district court awarded the defendants a total of $15,504.26 in fees and expenses. (R. 92.) The court arrived at that amount after excluding expenses related to defendants' motion for summary judgment and a portion of their discovery, both of which the court determined could be utilized in their pending state court action. PCIA now appeals from that order.

But, consistent with its conduct throughout this suit, PCIA has completely neglected on appeal to address the grounds on which sanctions were granted—its failure to properly investigate the existence of diversity jurisdiction. Instead, its entire brief focuses solely on the question of personal jurisdiction. In light of that oversight, we might hold simply that PCIA has waived its opportunity to challenge the district court's award of sanctions. But the defendants have been equally remiss in their response by failing to note PCIA's error and by themselves addressing only the issue of personal jurisdiction. They have thereby waived PCIA's waiver just as thoroughly as PCIA waived its own arguments in the first instance. Indeed, it is both parties' significant responsibility for the ill-fated course of this lawsuit and the resulting accrual of unnecessary costs that prompts us ultimately to vacate the district court's award of sanctions.

■ Of course, PCIA bore the burden of establishing the existence of diversity jurisdiction when it originally filed suit. *Dausch v. Rykse,* 9 F.3d 1244, 1245 n. 1 (7th Cir. 1993); *America's Best Inns, Inc. v. Best Inns of Abilene, L.P.,* 980 F.2d 1072, 1074 (7th Cir.1992). And its problems began when it alleged diversity in terms of the parties' residence rather than their citizenship, which is the only relevant question under 28 U.S.C. § 1332. *See Dausch,* 9 F.3d at 1245; *Amer-*

*ica's Best Inns,* 980 F.2d at 1074.[4] Thus, PCIA's complaint failed to establish diversity from the very start, despite its allegations of diverse *residence,* because it did not discuss the parties' citizenship. That alone would have required a dismissal for lack of subject matter jurisdiction. *America's Best Inns,* 980 F.2d at 1074.

■ But even putting that error to one side, the factual underpinnings of PCIA's allegations were called into question shortly after the complaint was filed. PCIA was put on notice of a potential problem (1) by Michael Genova's confusing May 1990 affidavit, which contained Genova's Missouri "residence" address [5]—the same address that PCIA ultimately responded to when it appeared in Genova's January 1991 deposition—and (2) by the defendants' July 1990 state court petition, which asserted that Genova was a citizen of Missouri. And the error became increasingly plain over time, as the fact that Genova both resided in and was a citizen of Missouri became ever more clear. PCIA did finally concede that Genova was a citizen of Missouri and that complete diversity was therefore lacking, but not until eleven months after suit had been filed. PCIA's failure to determine the existence of diversity prior to filing suit and its failure to respond promptly when the error came to light are certainly appropriate grounds for the imposition of Rule 11 sanctions. *See, e.g., Wojan v. General Motors Corp.,* 851 F.2d 969, 975 (7th Cir.1988); *S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.,* 842 F.2d 946, 949 (7th Cir.1988), *overruled in part on other grounds by Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928 (7th Cir.1989) (en banc).

But at the same time, defendants are not without responsibility under Rule 11, as they have a duty to mitigate their own costs. As we explained in *Dubisky v. Owens,* 849 F.2d 1034, 1037 (7th Cir.1988):

---

3. Because the appeal was dismissed in any event, we did not decide whether the notice of appeal had been premature in light of the defendants' still-pending motion before the district court. 979 F.2d at 1272.

4. Citizenship it determined on the basis of domicile, not residence. *Dausch,* 9 F.3d at 1245; *America's Best Inns,* 980 F.2d at 1074.

5. Ironically, the affidavit—which asserted that Genova was a "citizen and resident" of Kansas and also that his "residence" was in Missouri—supports the existence of diversity, albeit in apparent error, in suggesting that Genova was indeed a citizen of Kansas.

Rule 11 authorizes the district court to award as a sanction "reasonable expenses" which may include "a reasonable attorney's fee." The reasonableness requirement by its nature hinges on the particular facts and circumstances presented in a given case and looks not only to the hours and billing rate involved in responding to the other party's sanctionable conduct, but also to the appropriateness of the response taken. A party defending against a frivolous paper has a duty under Rule 11 to mitigate its legal fees and expenses by resolving frivolous issues quickly and efficiently. Counsel "must mitigate damages by correlating his response, in terms of hours and funds expended, to the merit of the claims." Further, the court must consider to what extent a defending party's injury could have been avoided or was self-inflicted. This entails an examination of the promptness and method of bringing the frivolous conduct to the attention of both the court and the opposing party. *See* Fed.R.Civ.P. 11 advisory notes ("[a] party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so"). "If a baseless claim could have been readily disposed of by summary procedures, there is little justification for a claim for attorney's fees and expenses engendered in lengthy and elaborate proceedings in opposition."

(Citations omitted). In *Dubisky*, the plaintiff had alleged diversity when it in fact was lacking. The court found that expenses incurred in the preparation of an elaborate motion to dismiss, albeit based on the lack of subject matter jurisdiction, were not reasonable. Holding defense counsel responsible for knowing the citizenship of her own client, the court reasoned that the error should have been apparent upon receipt of the complaint and may well have been addressed through a simple telephone call, which would have greatly reduced the costs that were subsequently incurred. The court thus held that the defendant had violated its duty to mitigate damages under Rule 11 and that it was not entitled to reimbursement for any costs that could have been avoided through a more reasonable response. *Id.* at 1037–39.

Here, the defendants' conduct was far more egregious than that of the *Dubisky* defendant, in that they failed even to respond to the diversity problem. Instead of raising that straightforward issue, the defendants chose to proceed on the basis of a much more complicated question—the lack of personal jurisdiction. PCIA should not now be made to pay for defendants' costly and unnecessary strategy. The defendants could have avoided nearly all of their expenses by merely informing PCIA of Genova's citizenship, which they reasonably should have known. And even granting defense counsel the leeway (to which he is not entitled) of not knowing his own client's citizenship, he certainly was put on notice of the problem in at least the same time frame as was PCIA, as the true facts became increasingly apparent. By failing to respond in a prompt and cost-efficient manner, defendants passed up the opportunity to mitigate their own damages. Under *Dubisky*, they are not entitled to reimbursement for any costs that could have been avoided by way of a more reasonable approach.

The district court's award of sanctions is therefore vacated and this case is remanded for an award of sanctions consistent with this opinion. PCIA may be sanctioned only for defendants' *reasonable* fees and costs.[6] Because the expenses incurred in pursuit of a dismissal for lack of personal jurisdiction were not reasonable, they may not be included in the award. Each side will bear its own costs on appeal.

---

**6.** As we noted in *PCIA I,* a district court may impose Rule 11 sanctions even if it does not have subject matter jurisdiction. 979 F.2d at 1273.