[No. B183969. Second Dist., Div. One. Oct. 11, 2006.]

MARK G. MAUGHAN et al., Plaintiffs and Appellants, v.
GOOGLE TECHNOLOGY, INC., Defendant and Appellant.

## COUNSEL

Girardi & Keese, John A. Girardi, Shahram A. Shayesteh; Law Offices of Werno & Associates and Don Werno for Plaintiffs and Appellants.

Quinn Emanuel Urquhart Oliver & Hedges, Timothy L. Alger, Kent J. Bullard and Lesley E. Williams for Defendant and Appellant.

## OPINION

**MALLANO, Acting P. J.**—Plaintiffs Mark G. Maughan and Brown & Maughan, an accounting corporation, on behalf of themselves and the putative class, appeal from the judgment in favor of defendant Google Technology, Inc. (Google). Google filed a cross-appeal from the judgment "insofar as it establishes attorneys' fees and costs."

By letter, this court invited the parties to brief: (1) whether the order granting Google's motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16 et seq.)[1] was final although the trial court did not rule on the request in the motion for attorney fees and costs; and if so, (2) whether the appeal must be dismissed as untimely; (3) whether the order granting

---

[1] All further section references are to the Code of Civil Procedure unless otherwise indicated.

"SLAPP" is an acronym for "strategic lawsuit against public participation," and the quintessential issue raised by such a special motion to strike, or anti-SLAPP motion, is whether the challenged action was one "arising from" activity protected by the anti-SLAPP statute (§ 425.16), which authorizes early dismissal of SLAPP actions. (See, e.g., *Navellier v. Sletten* (2002) 29 Cal.4th 82, 85, fn. 1 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

Google's separate motion for attorney fees and costs under the anti-SLAPP statute was appealable; and if so, (4) whether the cross-appeal must be dismissed as untimely. We have received their responses.

Based on our review of the record and applicable law, we affirm the judgment. The challenge of Maughan and Brown & Maughan to the order granting Google's anti-SLAPP motion is not cognizable on appeal from the judgment. Contrary to Google's contention in its cross-appeal, the trial court did not abuse its discretion in awarding $23,000 as the amount of reasonable attorney fees and costs to which Google was entitled.

## BACKGROUND

On November 22, 2004, Maughan and Brown & Maughan, on behalf of themselves and the putative class, filed a first amended complaint seeking damages and injunctive relief against Google based on three causes of action; defamation (libel), products liability (strict liability in tort), and unfair business practice (Bus. & Prof. Code, § 17200 et seq.).

On or about January 18, 2005, Google filed an anti-SLAPP motion to strike the complaint and for attorney fees and costs under the anti-SLAPP statute.

On February 24, 2005, the trial court granted Google's anti-SLAPP motion, but its order "signed and filed this date" was silent regarding attorney fees and costs. Also on the same date, a copy of the notice of entry of the order was served by mail by the clerk of the court.[2]

On or about March 18, 2005, Google filed a separate motion for attorney fees and costs under the anti-SLAPP statute.

On April 20, 2005, the trial court granted the motion and awarded Google $23,000 as fees and costs, and the order was "signed and filed this date." Also the same date, a copy of the notice of entry of the order was served by mail by the clerk of the court. The April 20, 2005 order recited, "A Judgment is also signed and filed this date."

---

[2] The trial court did not sign the proposed order submitted by Google, which would have provided that: (1) Google's "Special Motion to Strike and for Attorneys' Fees and Costs Pursuant to . . . § 425.16 is GRANTED"; (2) "[Maughan and Brown & Maughan's] First Amended Complaint is stricken in its entirety, and Judgment shall be entered in favor of Google . . . and against [Maughan and Brown & Maughan]"; and (3) Google "shall be awarded its reasonable attorneys' fees and costs incurred in bringing this motion upon submission of proof of actual fees and costs."

The judgment also entered on April 20, 2005, recapitulated the court's earlier order granting Google's anti-SLAPP motion and order granting Google's separate motion for attorney fees and costs in the amount of $23,000 under the anti-SLAPP statute. The judgment then concluded: "Accordingly, IT IS ORDERED AND ADJUDGED: [¶] That . . . Maughan and Brown & Maughan . . . take nothing, and the action is dismissed on the merits, with prejudice, and in its entirety. Further, . . . Google . . . is awarded attorneys' fees and costs in the amount of $___."[3]

On June 20, 2005, Maughan and Brown & Maughan filed a notice of appeal from "the Judgment of April 20, 2005 entered in favor of Google . . . ." No appeal was filed from the order granting Google's anti-SLAPP motion.

On July 1, 2005, Google filed a notice of cross-appeal "from the Judgment of April 20, 2005 insofar as it establishes attorneys' fees and costs." No appeal was filed from the order granting Google's motion for fees and costs under the anti-SLAPP statute.

## DISCUSSION

### 1. *Challenge to Anti-SLAPP Motion Order Not Cognizable*

In their appeal, Maughan and Brown & Maughan challenge the order granting Google's anti-SLAPP motion essentially on three grounds: (1) Google failed to prove that section 425.17, subdivision (b), the express anti-SLAPP motion exclusion for class actions and actions in the public interest (private attorney general), was inapplicable to this action; (2) Google did not carry its burden to show their claims were based on an issue of public interest and arose from protected speech or petitioning activity; and (3) Maughan and Brown & Maughan demonstrated their claims had the requisite minimal merit, because the trial court erred in determining that Google's search results do not necessarily convey a defamatory meaning and that their claims were barred by the Communications Decency Act of 1996 (CDA) (47 U.S.C. § 230). We conclude their challenge to the anti-SLAPP motion order is not cognizable on this appeal from the judgment.

■ "An order granting or denying a special motion to strike [under the anti-SLAPP statute] shall be appealable under Section 904.1." (§ 425.16, subd. (i); see generally § 425.16 et seq.) Section 904.1 provides "[a]n appeal . . . may be taken . . . [¶] . . . [¶] . . . [f]rom an order granting or

---

[3] Google's briefs reveal that the thrust of its cross-appeal concerns the $23,000 awarded as fees and costs under the anti-SLAPP statute. Google does not challenge that portion of the judgment awarding it "attorneys' fees and costs in the amount of $___."

denying a special motion to strike under Section 425.16." (§ 904.1, subd. (a)(13).) " 'If a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review.' [Citations.]" (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46 [269 Cal.Rptr. 228].)

The order granting the anti-SLAPP motion was filed on February 24, 2005, and notice of entry of the order was served by mail by the clerk of the superior court on the same day. Accordingly, the notice of appeal from that order had to be filed within 60 days, or no later than April 25, 2005. (Cal. Rules of Court, rule 2(a)(1).)[4] Thus, the merits of the issues raised on appeal by Maughan and Brown & Maughan cannot be reached. "If a notice of appeal is filed late, the reviewing court must dismiss the appeal." (Rule 2(b); cf. rule 45.1.)

■ That the trial court included no ruling on Google's request for attorney fees and costs in the motion does not compel a contrary conclusion on the theory that the order on the anti-SLAPP motion was simply an interim order. Google's failure to prompt the court to rule on its request and obtain such a ruling amounted to a forfeiture of its request. (See *People v. Hill* (1992) 3 Cal.App.4th 16, 43–44 [4 Cal.Rptr.2d 258].) The order granting the anti-SLAPP motion therefore was final when made, and thus appealable.

■ Section 906 is of no help to Maughan and Brown & Maughan because, as the order on the anti-SLAPP motion is itself appealable, we are foreclosed from reviewing that order on appeal from the judgment.[5] Section 906 provides in pertinent part that on appeal from the judgment "the reviewing court may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment . . . and may affirm, reverse or modify any judgment . . . and may direct the proper judgment . . . to be entered . . . ." But "[t]he provisions of this section *do not authorize* the reviewing court to *review any decision or order from which an appeal might have been taken*." (*Ibid.*, italics added.) "The taking of an appeal is . . . jurisdictional, and where no appeal is taken from an appealable order, a reviewing court has no discretion to review its merits." (*Berge v. International Harvester Co.* (1983) 142 Cal.App.3d 152, 158 [190 Cal.Rptr. 815].)

---

[4] All further rule references are to the California Rules of Court.

[5] In pertinent part, the judgment reads: "On February 17, 2005, [Google's] Special Motion to Strike and for Attorneys' Fees and Costs Pursuant to . . . § 425.16 came on for hearing . . . . By a written ruling dated February 24, 2005, the Special Motion to Strike was granted in its entirety." The February 24, 2005 order reveals no mention was made of attorney fees or costs.

## 2. *Cross-appeal Timely*

On June 20, 2005, Maughan and Brown & Maughan filed a notice of appeal from "the Judgment of April 20, 2005 entered in favor of Google . . . ." The superior court clerk served the notice of appeal by mail on June 21, 2005.

On July 1, 2005, Google filed its notice of cross-appeal from "the Judgment of April 20, 2005 insofar as it establishes attorneys' fees and costs." In pertinent part, the judgment reads: "On April 12, 2005, [Google's] Motion for Attorneys' Fees and Costs Pursuant to . . . § 425.16 came on before the Court. The Court granted the Motion for Attorneys' Fees and Costs on Apr[il] 20, 2005, and awarded to . . . Google . . . its reasonable fees and costs in the amount of $23,000.00."

Rule 3(e)(1) provides: "If an appellant timely appeals from a judgment . . . , the time for any other party to appeal from the same judgment . . . is extended until 20 days after the superior court clerk mails notification of the first appeal."

We conclude the cross-appeal from the judgment is timely, because it was filed within 20 days of mailing of the notice of appeal. Having determined that the cross-appeal is timely, it is inconsequential in this instance whether we were to review the order granting Google attorney fees and costs as an interim order under the judgment (§ 906) or to construe the cross-appeal to have been taken from the order itself. (Cf. *Johnston v. Corrigan* (2005) 127 Cal.App.4th 553, 556 [25 Cal.Rptr.3d 657] [holding order appealable]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 665–666, 685–686 [43 Cal.Rptr.3d 148] [order presumed appealable].) We therefore need not, and thus do not, determine whether an order granting attorney fees and costs to a prevailing defendant under the anti-SLAPP statute is directly appealable or, instead, reviewable only on appeal from the judgment.

## 3. *Order Granting $23,000 as Fees and Costs Not Abuse*

Google contends the trial court abused its discretion in reducing the attorney fees and costs sought by Google in its motion for attorney fees and costs under the anti-SLAPP statute. We disagree.

These unchallenged facts were set forth in the trial court's order granting Google's motion for attorney fees and costs: As the prevailing defendant on its anti-SLAPP motion, Google sought $112,288.63 in attorney fees and costs, consisting of $98,120.40 as fees and $5,168.23 as costs in connection with that motion, plus $9,000 as fees and costs in connection with its separate motion for fees and costs. "Although four attorneys worked on the

[anti-]SLAPP motion, Google seeks to recover fees earned only by partner Timothy L. Alger, Esq. who bills at the rate of $500 per hour and senior associate Lesley E. Williams, Esq. who bills at the rate of $350 per hour."[6]

The court granted Google's motion for fees and costs but reduced the amount awarded to $23,000 after explaining: "This Court routinely deals with attorneys' fee requests in complex cases and other contexts such as in class actions and discovery motions. As such, this Court has experience with how much time attorneys should be spending and typically do spend on difficult and complex matters. This court believes that a reasonable time spent on the [anti-]*SLAPP motion and the instant motion* [for fees and costs] is, as [Maughan and Brown & Maughan] have suggested, approximately 50 hours or one attorney work week. Averaging the billing rate of the two attorneys who worked on the motion results in $425 per hour. $425 per hour multiplied by 50 hours amounts to $21,250. Adding a reasonable figure for costs the Court believes that $23,000 is a generous and reasonable award of attorneys' fees and costs given the circumstances in this action."

■ Abuse of discretion is the standard applicable to review of an attorney fees award. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1130 [104 Cal.Rptr.2d 377, 17 P.3d 735].) We therefore decline Google's invitation to apply the substantial evidence rule. (Cf. *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 [108 Cal.Rptr.2d 34] ["A challenge in an appellate court to the sufficiency of the evidence is reviewed under the substantial evidence rule"].)

" 'While the concept "abuse of discretion" is not easily susceptible to precise definition, the appropriate test has been enunciated in terms of whether or not the trial court exceeded " 'the bounds of reason, all of the circumstances before it being considered. . . .' " [Citations.]' [Citation.] 'A decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.] In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review.' [Citation.]" (*Gouskos v. Aptos Village Garage, Inc.* (2001) 94

---

[6] In its order, the trial court noted Google asserted it had discounted both its fees and its costs by 40 percent "where the attorney time was spent on matters (i.e., a demurrer and motion to strike) unrelated to the [anti-]SLAPP motion."

Cal.App.4th 754, 762 [114 Cal.Rptr.2d 558].) Accordingly, an abuse of discretion transpires if " 'the trial court exceeded the bounds of reason' " in making its award of attorney fees. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830].)

Google has failed to carry its burden to show the trial court's award of $23,000 as attorney fees and costs constituted an abuse of discretion. Although cast as a challenge for abuse of discretion, Google's position is essentially that the trial court's ruling is not supported by substantial evidence. Google contends: "The Superior Court's decision to award $23,000 in fees and costs based on the unsupported claim of [Maughan and Brown & Maughan]'s counsel, and in the face of a detailed evidentiary showing by Google, was arbitrary and capricious" and the award should be reversed because it was "unsupported by substantial evidence and beyond 'the bounds of reason.' " Google further contends that its "evidentiary showing . . . established the baseline for any award of fees, and the court below was required, in departing from that baseline, to do so based on a careful evaluation of Google's evidence—not a wholesale rejection of the evidence in favor of the self-interested and unsupported claim of opposing counsel." Google also contends there is an "utter lack of 'substantial evidence' for the court's award" because "Maughan's estimate of time spent by his lawyers is not the kind of 'substantial evidence' required for a proper calculation of fees under" the anti-SLAPP statute (§ 425.16, subd. (c)).[7]

In its reply brief, Google continues its challenge to the sufficiency of the evidence to support the $23,000 award of fees and costs by arguing the trial court's reliance on the estimated 50-hour figure put forth by counsel for Maughan and Brown & Maughan in his declaration was "outrageous [in] that there was no documentary support whatsoever for that estimate." Google also renews its claim that the substantial evidence rule governs and that the fee award was not supported by substantial evidence. Although in its opening brief Google contends the trial court "abused its discretion by failing to use a lodestar analysis of Google's actual fees and costs," Google concedes in its reply brief that "the court touched on the lodestar factors in its decision . . . ."

---

[7] We find unpersuasive Google's argument that "[m]any courts have recognized the impropriety of using the time expended by the losing party as a 'reasonableness' measure for the prevailing party." As authority Google cites various decisions by lower federal courts. (See, e.g., *Ferland v. Conrad Credit Corp.* (9th Cir. 2001) 244 F.3d 1145, 1151; *Shaw v. AAA Engineering & Drafting, Inc.* (10th Cir. 2000) 213 F.3d 538, 543; *Norman v. Housing Authority of City of Montgomery* (11th Cir. 1988) 836 F.2d 1292, 1305, fn. 3; *Johnson v. Univ. Col. of Univ. of Ala. in Birmingham* (11th Cir. 1983) 706 F.2d 1205, 1208.) "Although we are obligated to follow the decisions of the United States Supreme Court, we are not bound by the decisions of the lower federal courts." (*Tully v. World Savings & Loan Assn.* (1997) 56 Cal.App.4th 654, 663 [65 Cal.Rptr.2d 545].)

Contrary to Google's claim, the trial court did not abuse its discretion by arbitrarily applying these lodestar adjustment factors. Initially, we point out the trial court did not, as asserted by Google, "arbitrarily use[] Maughan's counsel's claimed expenditure of time as the yardstick for an award of fees [and then] put window dressing on its decision by discussing Google's evidence of actual fees and costs." The court expressly found Maughan and Brown & Maughan's "counsel who, by this court and [Google]'s own admission, are capable lawyers with an impressive track record, and whose brief was of equal caliber to [Google]'s vis a vis the [anti-]SLAPP hearing, spent only 50 hours between one partner and one associate."[8] In evaluating the attorney hours claimed by Google's counsel, the trial court took into account not only this factual finding but also the court's own experience and expertise in handling complex civil cases.

In this regard, the court found "[i]n order to have charged $98,000 in fees for the [anti-]SLAPP motion the firm must be claiming over 200 hours of work. This seems excessive especially since Google's counsel acknowledge that they are old hats at [anti-]SLAPP motions and experts in defamation and the CDA. Such a motion should not have been such a monumental undertaking. Applying the factors suggested by [Google] in *Niederer v. Ferreira* [(1987) 189 Cal.App.3d 1485, 1507 [234 Cal.Rptr. 779]], this Court finds the fee request excessive."

Additionally, the trial court found "the time sheets attached to the motion are somewhat vague in their descriptions of what precisely defense counsel was doing for the claimed amount of time. Defense counsel disputes that it is seeking 400 hours of time (as claimed by [Maughan and Brown & Maughan]) but offers this Court no total number of hours it did spend on the [anti-]SLAPP motion."

The court further found that it had to "factor in some type of efficiency analysis" for these reasons. "This case had been active for approximately 6 months at the time of the [anti-]SLAPP motion. There was no discovery taken or other motion practice. Indeed, under the [anti-]SLAPP statute all proceedings are stayed once a[n anti-]SLAPP motion is filed. The Court's file reflects very few Court hearings on this matter. It is hard to believe that counsel for Google spent approximately four 50-hour work weeks preparing the [anti-]SLAPP motion. [(Fn. omitted.)] The litigation may have been difficult from the Court's perspective given the newly developed area of law vis a vis

---

[8] In opposition to the motion for fees and costs, John A. Girardi, a partner in the law firm representing Maughan and Brown & Maughan, submitted his declaration in which he stated that "[i]n reviewing firm records and approximating to the best of my ability, I estimate that the amount of time spent by firm associate Joseph A. Schwar and myself, on the thorough and complete representation of our client, was 50 hours."

the CDA but from [Google's] perspective, Google's counsel is clearly on the cutting edge of such jurisprudence and the firm has handled some of the only cases interpreting the [CDA]. Accordingly, counsel was presumably up to speed on the subject as well as being well versed in [anti-]SLAPP motion litigation." In a footnote, the court stated: Google "makes much of the detailed factual record that had to be developed for the motion regarding how Google works. While helpful, it simply did not merit the time expended."

In addressing the difficulty issue, the trial court announced it had "trouble believing that these [anti-]SLAPP experts reasonably needed to spend 200 hours researching the relevant law and drafting the [anti-]SLAPP motion." The court noted that "[c]ounsel for Google spends a large portion of its brief convincing the court that they are experts in this type of case. They have represented Lycos in one of the only cases to interpret the CDA. Counsel has expertise in defamation law and has litigated 20 [anti-]SLAPP motions to date."

On the issue of the monetary value of the action, the trial court found "[i]t is unclear how much money would have been involved in the litigation. The Court notes that the main relief sought by [Maughan and Brown & Maughan] appeared to be injunctive relief," namely, to compel "Google to stop the alleged misrepresentation." Google contends the trial court "unreasonably discounted the amount of money involved in the litigation by characterizing [the] requested relief as primarily injunctive." We disagree. Although the complaint sought monetary damages, including punitive damages and attorney fees, the lawsuit was essentially a putative class action, and at this early stage of the proceedings, it would be speculative to place any dollar amount on the alleged damages.

■ The trial court awarded fees and costs for both Google's "[anti-]*SLAPP motion and the instant motion*" for fees and costs. We conclude that the trial court did not abuse its discretion in this regard for reasons we shall explain. Initially, we note the omission from the trial court's order of an allocation of the specific amount of fees and costs attributable to each motion is inconsequential. A statement of decision is not required regarding an award of attorney fees pursuant to a motion. (See, e.g., *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294 [240 Cal.Rptr. 872, 743 P.2d 932]; see also *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 625 [134 Cal.Rptr. 602] [not "incumbent upon the trial court to specify each and every item in defendant's memorandum with which the court found fault"].)

■ We determine that Google forfeited any claim on appeal to additional fees and costs in making the fees and costs motion by failing specifically to argue its claim. (See, e.g., *Wint v. Fidelity & Casualty Co.* (1973) 9 Cal.3d

257, 265 [107 Cal.Rptr. 175, 507 P.2d 1383] ["it is counsel's duty by argument and citation of authority to show in what respects rulings complained of are erroneous"]; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546 [35 Cal.Rptr.2d 574] ["[I]t is established that '. . . an appellate brief "should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration." [Citation.] [¶] . . . This court is not inclined to act as counsel for . . . appellant and furnish a legal argument as to how the trial court's rulings . . . constituted an abuse of discretion.' [Citation.]"].)

Additionally, a review of the record establishes that Google's request for fees and costs incurred in making the fees and costs motion was unsupported by the requisite evidence necessary for the court to exercise its discretion.

Google sought an award of attorney fees and costs regarding its anti-SLAPP motion in the amount of "$103,288.63, and in connection with [its fees and costs] motion in the amount of $9,000.00—for a total of $112,288.63." In its motion for an award of fees and costs, however, Google specifically acknowledged: "The actual fees and costs relating to this motion are not yet known, but Google estimates that fees will be in the amount of $9,000, including the preparation of a reply and appearance at a hearing." As support, Google relied on paragraph 15 of the March 18, 2005 declaration of Timothy L. Alger, an attorney for Google. Mr. Alger stated that he prepared the motion for attorney fees and costs and that "[p]reparation of the motion required about 10 hours of my time, and I anticipate that preparation of a reply will require about four hours of my time, and preparation for and attendance at a hearing on the motion will require another four hours of time. At my regular billing rate, Google will incur fees for 18 hours of time in the amount of $9,000." Google presented nothing more, such as time sheets or other evidence setting forth the breakdown of time in relation to services provided by Mr. Alger as to preparation of the fees and costs motion, preparation of a reply, or time spent at the hearing.

In view of the foregoing, we conclude Google failed to carry its burden to establish the trial court abused its discretion, namely, that its decision was arbitrary, irrational, or beyond the bounds of reason. We therefore affirm the order granting Google $23,000 as attorney fees and costs under the anti-SLAPP statute.

### 4. *No Additional Attorney Fees/Costs to Google Warranted*

Google requests costs and attorney fees on appeal. This request is denied because there is no "prevailing" party on appeal. "In any action subject to

subdivision (b), a prevailing defendant on [an anti-SLAPP motion] shall be entitled to recover his or her attorney's fees and costs." (§ 425.16, subd. (c).) Although we affirm the judgment against Maughan and Brown & Maughan, Google did not "prevail" on appeal because we also affirm the judgment regarding the award of attorney fees and costs under the anti-SLAPP statute. Accordingly, we conclude there is no prevailing party.

## DISPOSITION

The judgment is affirmed. Each party shall bear own costs on appeal.

Rothschild, J., concurred.

**VOGEL, J.,** Concurring and Dissenting.—I agree with the majority's conclusion that the challenge to the anti-SLAPP (anti-strategic lawsuit against public participation) motion order is not cognizable on this appeal, but dissent from those parts of the opinion affirming the award of attorney fees and refusing to award additional fees on appeal. Because my view of the attorney fee issue is based in large part on the complexity of this case and the concomitant exposure to Google, the majority's statement of facts is insufficient to make my point—and I thus offer a bit more detail.

### A.

Mark G. Maughan and Brown & Maughan (the firm is included in my references to Maughan) filed this class action against Google Technology, Inc., seeking damages and injunctive relief for libel, products liability, and unfair business practices on the ground that a Google search for "Mark Maughan Accountancy" (or a variation on that theme) generates a list of Web sites "suggesting" he·was disciplined by the California Board of Accountancy for "gross negligence" and accepting a contingent fee for the preparation of tax returns, which he says are "veritable scarlet letters in the accounting world." Maughan concedes he has been disciplined for other wrongful conduct, and that the allegedly libelous search results showed his name and, separated by ellipses, statements describing misconduct by other accountants in a listing of disciplinary actions created by the Board of Accountancy.

Google responded with a special motion to strike (Code Civ. Proc., § 425.16) and for attorney fees.[1] Over Maughan's opposition, the motion was granted, the trial court finding that Google's statements were made in a public forum about a matter of public interest (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1006 [113 Cal.Rptr.2d 625]; *Damon v. Ocean*

---

[1] Undesignated section references are to the Code of Civil Procedure.

*Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 [102 Cal.Rptr.2d 205]), that this action was not brought solely for the benefit of the public interest (§ 425.17), and that it was "unlikely" that Maughan would ultimately prevail on any of his claims (1) because they were barred by the immunity provision of the Communications Decency Act of 1996 (47 U.S.C. § 230(c)(1); *Batzel v. Smith* (9th Cir. 2003) 333 F.3d 1018, 1026; *Carafano v. Metrosplash.com, Inc.* (9th Cir. 2003) 339 F.3d 1119, 1122–1125), and (2) because, as a matter of law, search engine results are not reasonably understood as conveying a defamatory meaning (*Knievel v. ESPN* (9th Cir. 2005) 393 F.3d 1068, 1073–1074; *Forsher v. Bugliosi* (1980) 26 Cal.3d 792, 802-803 [163 Cal.Rptr. 628, 608 P.2d 716]).[2]

Google then filed a motion for attorney fees in which it asked for fees of $98,120.40 and costs in the amount of $5,168.23. Maughan opposed the motion, contending his lawyers had "spent significantly less time but produced an equally valuable product of work," approximating their lawyers' time at 50 hours, and suggesting (without any evidentiary support) that Google's claim was "vastly over the top and . . . patently unreasonable." The trial court bought Maughan's opposition hook, line and sinker, fixing Google's fees at $21,250 based on 50 hours at $425 per hour, and its costs at only $1,750, a total of $23,000.

Maughan did not appeal from the order granting Google's special motion to strike but did appeal from the judgment of dismissal, contending the anti-SLAPP motion should have been denied. Google challenged the appeal as untimely and on the merits, cross-appealed to challenge the trial court's reduction of its fees and costs, and requested fees on appeal. As noted at the outset, I agree with the majority's conclusion that Maughan's challenge to the anti-SLAPP order is not cognizable on this appeal from the judgment, but it is my view that Google's fees and costs should not have been reduced at all,

---

[2] Section 230(f)(2) of the Communications Decency Act (47 U.S.C. § 230(f)(2)) defines an "interactive computer service" as "any information service [or] system . . . that provides or enables computer access by multiple users to a computer server," and subdivision (c)(1) of the same statute grants immunity this way: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Congress created this immunity "to promote the continued development of the Internet and other interactive computer services and . . . [¶] . . . to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." (47 U.S.C. § 230(b)(1), (2).) Other courts have held that interactive Web sites similar to search engines are immune. (E.g., *Carafano v. Metrosplash.com, Inc.* (C.D.Cal. 2002) 207 F.Supp.2d 1055, 1065–1066 [interactive dating services]; *Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 831, fn. 7 [121 Cal.Rptr.2d 703] [interactive auction site]; *Schneider v. Amazon.com, Inc.* (2001) 108 Wn.App. 454 [31 P.3d 37, 40] [reader comments at bookseller's site]; *Ben Ezra, Weinstein, & Co. v. America Online Inc.* (10th Cir. 2000) 206 F.3d 980, 983, 985 [searchable stock quote database].)

and that Google is entitled to its fees and costs as the party prevailing on this appeal. I would reverse the award of attorney fees and costs but otherwise affirm the judgment.

## B.

I agree with Google that the trial court abused its discretion by reducing its fee award to less than one-fourth of the amount requested or, for that matter, at all.

## 1.

Google's motion for fees and costs established the following *uncontroverted* facts.

The case was factually and legally complex, and the magnitude of risk to Google was substantial. Google's search engine operates on a computer algorithm that responds to query terms provided by Google's users. The search engine (the computer) performs all required tasks (finding, ranking, and excerpting documents) in a fraction of a second, making no judgment about the documents it finds on the Web, all of which are created by others. No human edits the results before they are delivered to the Google user. Maughan sought an injunction that would have required Google to employ humans to review and edit the computer's work, a process that would have slowed the present system to a crawl and placed Google at a profound competitive disadvantage. Maughan also sought compensatory and punitive damages for himself and a class of thousands.

For these reasons, Google retained experienced and qualified lawyers (Quinn Emanuel Urquhart Oliver & Hedges, LLP) with expertise about both the substantive and procedural issues raised by Maughan's complaint. Quinn Emanuel's billing rates are comparable to those charged by comparable California law firms (as shown by Google's evidence, a survey published in the National Law Journal in December 2004). In drafting the anti-SLAPP motion and the reply to Maughan's opposition, Quinn Emanuel had to address three major points: (1) the application of the anti-SLAPP statute to Maughan's claims; (2) the immunity granted by the Communications Decency Act, and (3) the law of defamation as applied to search engine results.

In support of its motion, Google presented Quinn Emanuel's invoices, redacted as necessary to protect Google's attorney-client privilege, and explained that the invoices covered a demurrer and a motion to strike the class and representative allegations as well as the anti-SLAPP motion. Google did not ask for fees for work performed on the other matters, only for the

hours spent by two lawyers (Timothy L. Alger, a partner who bills at the rate of $500 per hour, and Lesley E. Williams, an associate who bills at the rate of $350 an hour) on the anti-SLAPP motion—and then discounted by 40 percent the hours devoted to issues that overlapped the other motions. Thus, although Google was billed a total of $169,173.10, it sought only about 60 percent of that sum, or $98,120.40. The same formula was applied to Google's costs, so that the total ($8,613.72) was discounted by 40 percent to $5,168.23. Google asked for an additional $9,000, an estimate of the fees and costs it incurred in making the motion for fees.

**2.**

In his four-page opposition to Google's motion for fees and costs, Maughan claimed that, "[b]y any reasonable attorney's standards (including the attorneys at Girardi & Keese who spent significantly less time but produced an equally valuable product of work) both the time spent and the amount calculated are unreasonable." Maughan took issue with Google's "arbitrarily applied" 40 percent writeoff (but did not suggest an alternative approach), and offered nary a word about Google's costs. At the heart of the opposition is Maughan's comparison to the hours supposedly spent by his lawyers: "In comparison, [Maughan's] attorneys, who defense counsel states were also 'capable lawyers with an impressive track record for class action litigation' . . . , spent significantly less time and incurred significantly less costs and fees in preparing the same amount of work which was of equal caliber." While I agree that Girardi & Keese are capable lawyers with an impressive track record in litigation (I wouldn't limit it to class actions), I found no evidence supporting Maughan's opposition.

First, the declaration by John A. Girardi states only this: "I *estimate* that the amount of time spent by firm associate Joseph A. Schwar and myself, *on the thorough and complete representation of our client, was 50 hours*. [¶] Although the opposition was clearly unsuccessful, the court was moved to comment that both [Google's] and [Maughan's] oppositions [*sic*] were well researched and well briefed. [Maughan] achieved this end with a diligent use of resources. [¶] [Google's claim for 400 hours] is vastly over the top and is patently unreasonable."[3] (Italics added.) No time records are attached, no

---

[3] Mr. Girardi estimates that his firm spent 50 hours "on the thorough and complete representation" of Maughan. I assume he means in opposing the anti-SLAPP motion—because the number of hours seems too low for that, let alone for the entire case, which includes an original and first amended complaint and opposition to two other motions. With regard to Maughan's assertion that Quinn Emanuel billed Google for 400 hours, he doesn't explain how he arrived at that figure. Because of the discount applied by Google in its motion for fees, it is unclear how many hours are included in the amount requested—but given the rates charged, it could not possibly be more than 200 hours worth of work.

explanation is given for Mr. Girardi's "estimate," and Maughan doesn't say how much he spent on costs.

Second, the opposition to the anti-SLAPP motion was not comparable to the motion itself.

*The Anti-SLAPP Motion.* Of necessity, Google's anti-SLAPP motion explained the intricacies of its search engine's operation and the damaging effect of the injunctive relief sought by Maughan's complaint; discussed the anti-SLAPP law, the Communications Decency Act's immunity, and the law of defamation; and (in support of its immunity and defamation arguments) explained in detail the difference between a search engine and an "information content provider" as relevant to these issues.[4] In a 14-page declaration, Daniel Dulitz (a Google software engineer) detailed the service provided by Google and explained how it works and how to interpret its search results, emphasizing that "[e]very aspect of Google's search process, from the time a query is sent by a user's web browser to the time the results are displayed on the user's screen, is performed by computer hardware and software and is completely automated. No human at Google ranks web pages, finds query terms, summarizes documents, or manipulates search timers. The query terms are selected by the user. The web pages in Google's database are created by the developers of those sites, stored without substantive alteration in Google's database, and made available to Google users for searching via Google's search engine technology." "A Google query is usually processed in less than half a second . . . ."

Google also established that its search engine results were authored by others, not Google, and that Google's computers merely extract search terms through an automatic process, without human intervention. Google's "terms of service" notice to its users makes this clear: The "sites displayed as search results or linked to by Google Services are developed by people over whom Google exercises no control. . . . A search using Google Services may produce search results and links to sites that some people find objectionable, inappropriate, or offensive. We cannot guarantee that a Google Search will not locate unintended or objectionable content and assume no responsibility for the content of any site included in any search results or otherwise linked to by Google Services." In another declaration, Timothy L. Alger (a Quinn Emanuel partner) authenticated copies of printouts of Web pages posted by

---

[4] In *Carafano v. Metrosplash.com, Inc., supra,* 339 F.3d at page 1124, the Ninth Circuit explained that under the immunity statute, "so long as a third party willingly provides the essential published content [that is the information content provider], the interactive service provider [such as Google] receives full immunity regardless of the specific editing or selection process."

the California Board of Accountancy (certified by the board's custodian of records) to establish the discipline imposed on Maughan and the postings on the board's Web site.

*The Opposition to the Anti-SLAPP Motion.* Maughan's opposition focused on the manner in which Maughan came upon the allegedly defamatory Google search results but offered nary a word about the nature of a search engine or any of the information put forth in Google's moving papers. On the law, Maughan's opposition discussed the general rules applicable to run-of-the-mill anti-SLAPP motions, insisted that an injunction was necessary without any discussion of the effect it would have on Google's automated search engine, and relied on inapposite authorities to suggest that, contrary to all the evidence (including his own), Google is an Internet content provider. The evidentiary support for Maughan's opposition consisted of his own declaration explaining the discipline imposed on him by the California Board of Accountancy and the manner in which he found the allegedly defamatory Google search results. Other printouts of Google search results are authenticated by Maughan's lawyer (Mr. Schwar), and publication (for the libel cause of action) is established by a two-paragraph declaration from Aaron Greenwood to the effect that he was "shocked" when he saw the search result.[5]

## 3.

In its reply vis-à-vis its motion for fees, Google neatly summarized Maughan's position this way: "After launching a class action lawsuit that attacked the very manner in which Google does business, and seeking a broad injunction and tort damages on behalf of unknown thousands of people, [Maughan] now—when faced with a mandatory fee award—suddenly say[s] 'never mind,' and attempt[s] to belittle the litigation. This contention is especially disingenuous given that Google fully informed [Maughan] of its defenses and its intention to bring an anti-SLAPP motion. [Maughan] knowingly assumed the risk that [he] would have to pay for Google's successful effort to dispose of this case. [¶] . . . [¶] That [Maughan's] counsel now asserts that he spent minimal time on the lawsuit . . . establishes only that the action was brought without reasonable inquiry into its factual and legal basis. It does not warrant a reduction in Google's fees."

As Google pointed out, Maughan did not dispute Quinn Emanuel's billing rates, only the number of hours spent on the anti-SLAPP motion (enhanced

---

[5] Of course, Google (unlike Maughan) also had to prepare a reply, and Google's reply addressed all the points raised by Maughan, explaining that injunctive relief is not available for defamation claims, that (contrary to Maughan's assertion) the anti-SLAPP statute applies to all of Maughan's claims, that Maughan could not possibly prevail on any of his claims, and that the search results were in any event not defamatory.

by a conclusory assertion that some of the work could have been done by a less experienced and less expensive associate). Although he had copies of Quinn Emanuel's invoices, Maughan did not identify any item as unnecessary, and he did not suggest an alternative formula (other than the accepted lodestar used by Google—multiplying the number of hours by the hourly rates) to arrive at a more reasonable fee.

### 4.

The trial court acknowledged that Google sought fees for only two lawyers (Alger at $500 per hour and Williams at $350 per hour), and acknowledged that Google had discounted the lawyers' time and all costs by 40 percent to the extent their work was relevant to the other pending motions, but rejected Google's request for $98,120.40 for fees and $5,168.23 for costs. Instead, the court looked at Google's timesheets, described them as "somewhat vague in their descriptions of what precisely defense counsel was doing for the claimed amount of time" (ignoring the fact that the invoices had been redacted to delete privileged information), found that 200 hours "seem[ed] excessive especially since Google's counsel acknowledge that they are old hats at SLAPP motions and experts in defamation and the [Communications Decency Act]. Such a motion should not have been such a monumental undertaking."

The court gave lip service to the factors to be considered in determining the reasonableness of a fee request—"the nature of the litigation and its difficulty; the amount of money involved in the litigation; the skill required and employed in handling the litigation; the attention given to the case; the attorney's success, learning, age and experience in the particular type of work demanded; the intricacy and importance of the litigation; the labor and necessity for skilled legal training and ability in trying the case; and the amount of time spent on the case" (*Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1507 [234 Cal.Rptr. 779])—but in the end simply accepted Maughan's suggestion that he shouldn't have to pay for more than the time Girardi & Keese "estimated" it spent, and that Maughan shouldn't have to pay at the rates billed by Google's lawyers. The court gave Google $23,000—50 hours at $425 per hour plus a fraction of its costs.

### 5.

I agree with Google that the trial court abused its discretion, and that there is no substantial evidence to support its order. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 322–323 [193 Cal.Rptr. 900, 667 P.2d 704] [the starting point of every fee award must be a calculation of the attorney services in terms of the time he has expended on the case, and the exercise of

the court's discretion in awarding attorney fees must bear some reasonable relationship to the lodestar figure of time spent and hourly compensation]; *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 643 [71 Cal.Rptr.2d 632] [the trial court's exercise of discretion must be based upon a proper utilization of the lodestar method]; *In re Cortez* (1971) 6 Cal.3d 78, 85 [98 Cal.Rptr. 307, 490 P.2d 819] ["judicial discretion" implies the absence of arbitrary determinations, capricious dispositions, and whimsical thinking]; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 659 [49 Cal.Rptr.2d 620], disapproved on another point in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685] [upholding a fee award under the anti-SLAPP statute because it was supported by substantial evidence and there was no evidence to the contrary]; *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1248 [132 Cal.Rptr.2d 57] [same]; *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1052–1053 [61 Cal.Rptr.2d 58] [same].)

### (a)

The anti-SLAPP statute is neither ambiguous nor equivocal. It says the "prevailing defendant on a special motion to strike *shall be entitled to recover [its] attorney's fees and costs.*" (§ 425.16, subd. (c), italics added; see *Pfeiffer Venice Properties v. Bernard* (2002) 101 Cal.App.4th 211, 215 [123 Cal.Rptr.2d 647] [the award of attorney fees to the party prevailing on an anti-SLAPP motion "is not discretionary but mandatory"].) Although the award of fees must be reasonable, it must also "adequately compensate the defendant for the expense of responding to a baseless lawsuit." (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830]; see also *Liu v. Moore* (1999) 69 Cal.App.4th 745, 750 [81 Cal.Rptr.2d 807] [the relief afforded by section 425.16 includes "financial relief in the form of attorney's fees and costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits"].) To that end, the prevailing party is entitled not only to the fees incurred in making the anti-SLAPP motion, but also the fees incurred in enforcing its right to mandatory fees. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141 [104 Cal.Rptr.2d 377, 17 P.3d 735].)

### (b)

Because Google presented a prima facie showing that its fee request was fair and reasonable, the burden of proof was on Maughan to show, by admissible evidence, that Quinn Emanuel's fees were unreasonable—either the number of hours or the hourly rate or both (*Gates v. Gomez* (9th Cir. 1995) 60 F.3d 525, 535; *Ketchum v. Moses, supra*, 24 Cal.4th at pp. 1140–1141;

*Church of Scientology v. Wollersheim, supra,* 42 Cal.App.4th at p. 659), and it certainly was not enough to say that, because Girardi & Keese purportedly spent less time, so too should have Quinn Emmanuel. (*Brandt v. Schal Associates, Inc.* (7th Cir. 1992) 960 F.2d 640, 648 [rejecting a similar assertion because the court had "little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was only firing blanks"]; *Ferland v. Conrad Credit Corp.* (9th Cir. 2001) 244 F.3d 1145, 1151 ["opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated . . . . Comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party, therefore, does not necessarily indicate whether the hours expended by the party seeking fees were excessive"].)

### (c)

This was not a small case with minimal risk. To the contrary, the complaint raised significant free speech issues involving a search engine's immunity for republication of content originally published by interactive computer services, plus additional issues about the nature of defamation in this context, and the relief sought went to the heart of Google's business—its ability to provide instantaneous search results without human intervention. As the trial court conceded, the litigation was "difficult from the Court's perspective given the newly developed area of law vis-à-vis the [Communications Decency Act]," and the probability of an appeal was apparent from the outset (if not to the trial court, certainly to the parties)—so that a thorough defense and complete evidentiary record had to be presented by Google. For these reasons, I believe the trial court's analysis was flawed.

*The Nature of the Litigation and Its Difficulty.* The trial court said it was "hard to believe that counsel for Google spent approximately four 50-hour work weeks preparing the SLAPP motion," and then discounted "the detailed factual record that had to be developed for the motion regarding how Google works," finding it "helpful" but concluding it "simply did not merit the time expended." I disagree. Daniel Dulitz's declaration certainly aided my understanding of the issues, and I know from my own experience how many lawyer hours it takes to translate an expert's technical jargon into an explanation that can be absorbed by a judge. (*Niederer v. Ferreira, supra,* 189 Cal.App.3d at p. 1507 [judges may rely on their own experience and knowledge, as lawyers and as judges, in determining the reasonable value of the attorney's services].)

In the same vein, the trial court conceded that this "litigation may have been difficult from the Court's perspective," but then used Quinn Emanuel's expertise as a reason for reducing its fee, finding that "Google's counsel is clearly on the cutting edge of such jurisprudence and the firm has handled some of the only cases interpreting the [Communications Decency] Act. Accordingly, counsel was presumably up to speed on the subject as well as being well versed in SLAPP motion litigation. Hence, the Court must factor in some type of efficiency analysis." The trial court was mistaken. From the record, it appears that no court had previously been asked to decide whether the Communications Decency Act of 1996 protects search engine providers, or whether Internet search results can support a defamation claim—there are close cases, but none directly on point. The anti-SLAPP motion was not a cut-and-paste project. Of course, there is also the fact that Maughan was represented by one of the preeminent plaintiff's firms in town, "capable lawyers with an impressive track record for class action litigation" who had to know their presence would justifiably provoke a full court press.

*The Amount of Money Involved in the Litigation.* The trial court ignored the significance of this litigation to Google, finding only that it was "unclear how much money would have been involved in the litigation [because] the main relief sought by [Maughan] appeared to be injunctive relief [that would make] Google stop the alleged misrepresentation." The court was mistaken. Maughan asked for both compensatory and punitive damages for himself and for a class consisting of all persons in California "who must be licensed by the State of California in order to carry out the regular functions of their business or profession, and of whom a registry is maintained by the State of California or any of its agencies which is accessible to the public through [Google's] search engine software." Medical doctors. Dentists. Podiatrists. Physical therapists. Nurses. Lawyers. Accountants. Architects. General contractors. Realtors. I could go on, but I think this brief list makes the point.

More importantly, the trial court's analysis ignores the undisputed evidence establishing that the injunctive relief sought by Maughan would have imposed on Google's automated search service an obligation to employ humans to edit search results, thereby depriving it of its ability to provide the instantaneous response that has fueled its growth.

*The Skill Required and Employed in Handling the Litigation.* In considering this issue, the trial court once again used Quinn Emanuel's expertise as a reason for reducing its fees, finding that its skill should have made it more efficient. With that, the court commented on its own experience with "attorneys' fee requests in complex cases" and in deciding "how much time attorneys should be spending and typically do spend on difficult and complex matters." On that basis, the court simply adopted Maughan's proposal—"50

hours or one attorney work week"—then averaged the two attorneys' billing rates to arrive at $425 per hour, and gave Google only $21,250 for the fees it incurred in opposing the motion *and* in pursuing its claim for fees. For no reason at all, the court also cut the cost bill from $5,168.23 to $1,750, a total of $23,000.

### (d)

In the anti-SLAPP context, prevailing parties are "compensated for hours reasonably spent on fee-related issues," and it is only when the request appears "unreasonably inflated" that the trial court is permitted to reduce the award. (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1137.) Here, we have nothing more than Maughan's conclusory and unsupported assertion that Quinn Emanuel's fees were too high, and (in my view) the trial court's apparent misunderstanding about the application of the factors articulated in *Niederer v. Ferreira, supra,* 189 Cal.App.3d at page 1507. The complexity of the issues, the substantiality of the risk to the defendant, and the skill and experience of the lawyers are factors justifying a fee enhancement, not a reduction of hours and hourly rates. As the Supreme Court explained in *Ketchum v. Moses, supra,* 24 Cal.4th at pages 1138–1139, a "reasonable hourly rate" is the product of a multiplicity of factors including the level of skill, time limitations, the amount at issue, and the attorney's reputation—and the trial court has discretion to enhance, not reduce that amount, for such things as exceptional skill.

Because Google's uncontroverted evidence established the baseline for the award of fees, any departure from the amount requested had to be based on some evidence in the record suggesting the fee was unreasonable, not (as Google puts it) on a "wholesale rejection of the evidence in favor of the self-interested and unsupported claim of opposing counsel." (*Shaw v. AAA Engineering & Drafting, Inc.* (10th Cir. 2000) 213 F.3d 538, 543 [the opponent's time is not an immutable yardstick of reasonableness]; *Norman v. Housing Authority of City of Montgomery* (11th Cir. 1988) 836 F.2d 1292, 1305, fn. 3 [the time spent by opposing counsel is seldom relevant to a determination of the hours reasonably expended on many tasks]; *Johnson v. Univ. Col. of Univ. of Ala. in Birmingham* (11th Cir. 1983) 706 F.2d 1205, 1208 [the amount of hours needed by one side to prepare adequately may differ substantially from that for opposing counsel because the nature of the work may vary dramatically]; *Ferland v. Conrad Credit Corp., supra,* 244 F.3d at p. 1151 ["the prevailing party's attorney—who after all, did prevail—spent more time because she did better work"]; *Samuel v. University of Pittsburgh* (W.D.Pa. 1978) 80 F.R.D. 293, 294-295 [estimating that, before trial, the hourly demands on defense counsel are triple that of plaintiff's counsel].) It goes without saying that the same is true with regard to costs.

For these reasons, I believe Google is entitled to the amount it requested for fees and costs in making the anti-SLAPP motion ($98,120.40 for fees and $5,168.23 for costs), plus the $9,000 it requested for its fees incurred in obtaining the award of fees, and I would reverse the judgment insofar as the award of fees and costs is concerned. It follows that I also believe Google is entitled to its costs and fees on appeal.[6]

The petition of appellant Google Technology, Inc., for review by the Supreme Court was denied February 7, 2007, S148197.

---

[6] This would not be the first large fee award for a successful anti-SLAPP motion. (*Metabolife Intern., Inc. v. Wornick* (S.D.Cal. 2002) 213 F.Supp.2d 1220 [granting application for $318,687.99 for trial court and appellate attorney fees and costs].)