Filed 6/27/13  Horton v. Lewis CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TIMOTHY B. HORTON et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>WENDI LYNN LEWIS et al.,<br><br>    Defendants and Respondents. | D062141<br><br><br><br>(Super. Ct. No.37-2010-00060134-CU-PA-NC) |

APPEAL from postjudgment orders of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Kim James Kakadelas; Miller & Steele and David R. Miller for Plaintiffs and Appellants.

Winet, Patrick & Weaver, Randall L. Winet and Marilyn Perrin for Defendants and Respondents.

Plaintiff and appellant Timothy Horton (Timothy)[1] appeals two postjudgment orders addressing a motion to tax the costs of defendant and respondent Wendy Lewis (Lewis), and the amount of Timothy's attorney fee award. He contends the court erred by (1) not following *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 130 (*Nelson*) when apportioning costs; and (2) reducing the attorney fees award to the amount stipulated in his attorney's contingency fee agreement, instead of awarding the reasonable attorney fees incurred. We affirm the postjudgment order regarding attorney fees, but reverse the order regarding costs, and remand with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

According to the parties' joint trial readiness statement, the underlying lawsuit arose from an October 2008 incident in which Lewis ran a traffic light and struck a vehicle driven by Timothy Horton. Lewis admitted fault and pleaded guilty to felony driving under the influence. (Veh. Code, § 23153, subd. (a).) Lewis admitted that her blood alcohol content was .25 percent around the time of the incident, and she had inflicted great bodily injury upon Timothy. The issues in dispute at trial related to the nature of Timothy's injuries, his damages, whether Lewis acted out of malice, and the amount of punitive damages, if any.

On October 4, 2011, approximately one month before trial started, Timothy's wife, Apryl Horton, dismissed without prejudice her cause of action against Lewis for loss of

---

[1] We refer to the plaintiffs by their first names to avoid confusion. We mean no disrespect.

consortium, without obtaining in exchange a waiver of costs from Lewis. Separately, Timothy dismissed Lewis's husband from the case on the eve of trial.

Before trial, Lewis made an offer to compromise under Code of Civil Procedure,[2] section 998 for $180,000, exclusive of attorney fees, but Timothy rejected the offer.

Following trial, the jury awarded Timothy $182,127.33 in economic and noneconomic damages, and concluded that during the incident Lewis did not drive her vehicle with malice.

DISCUSSION

I.

*Error in Apportioning Costs Under the* Nelson *Case*

A. *Background*

Lewis filed a postjudgment memorandum of costs seeking a total of $6,622.35, consisting mainly of deposition costs. Timothy moved to tax Lewis's costs. Ruling that Lewis was the prevailing party on the loss of consortium claim, the court's ruling on Timothy's motion was mixed. On the one hand, it denied Lewis certain costs because "[a]s of the date of the dismissal of [Apryl's] claim, costs incurred by [Lewis] related to Apryl's action were not reasonable or necessary." On the other hand, the court granted Lewis certain deposition costs, ruling: "As to the 'pre-dismissal' depositions, the Court concludes based on the opposition declaration of [Lewis's attorney, Aaron Hanes], these costs were reasonably necessary to the conduct of the litigation by Apryl and are

---

[2]    All further statutory references are to the Code of Civil Procedure.

3

reasonable in amount and thus the motion to tax these costs is denied. The Hanes declaration shows that these depositions were taken in defense of Apryl's claim that her husband was severely injured and his activities and the family dynamics were altered as a result of the accident. This evidence defeats any attempt by [Timothy] to 'distinguish between costs incurred as a result of the actions or tactics of one plaintiff as opposed to another."

The court also addressed and dismissed Timothy's attorneys' arguments regarding specific costs Lewis sought: "[Timothy's] reply focuses on the depositions of the Carlsbad Police officers and the eyewitness. In that brief, [Timothy] argues that these depositions were taken 'at least in significant part' to support [Timothy's] punitive damages allegations and to show the extent of [Lewis's] intoxication. The quoted language further demonstrates these depositions [were] not taken solely to defend against [Timothy's] action but that they were also related to Apryl's action. Thus, they were reasonably necessary to the conduct of the litigation by Apryl and as such, they are recoverable by [Lewis]."

B. *Applicable Law*

We review a trial court's order granting or denying a motion to tax costs for abuse of discretion. (*Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1556-1557; *Arno v. Helinet Corp.* (2005) 130 Cal.App.4th 1019, 1025.) That is, we will reverse such an order only when the trial court's action is arbitrary, capricious or exceeds the bounds of all reason under the circumstances. (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1249-1250.)

The majority in *Nelson* ruled, "Costs recoverable under section 1032 are restricted to those which are reasonably necessary to the conduct of the litigation and reasonable in amount. [Citation.] However, an across-the-board reduction based upon the number of plaintiffs, without regard to the reason the costs were incurred, is not a determination of the necessity or reasonableness of the costs." (*Nelson*, *supra*, 72 Cal.App.4th at p. 130.) Accordingly, the *Nelson* court reversed the trial court's ruling on a motion to tax costs, concluding that the trial court had made no attempt to distinguish between costs incurred as a result of the actions or tactics of one plaintiff as opposed to another. (*Ibid*.) Further, the *Nelson* majority concluded, "[I]t is clear the [trial] court made no analysis of the reasonableness or necessity of the costs affected by the two-thirds reduction." (*Ibid*.)

C. *Analysis*

Here, as noted, the court specifically determined that the pre-dismissal depositions were reasonably priced and necessary, and allowed recovery for those costs. Further, the court concluded the post-dismissal costs were not reasonable, and therefore disallowed them. We recognize that a loss of consortium claim is derivative of and dependent on the spouse's negligence action. (*Calatayud v. State of* California (1998) 18 Cal.4th 1057, fn 4.) Nonetheless, we note that even if Apryl had not been involved in the litigation, Lewis would have incurred some of the same expenses in defending against Timothy's claim. We conclude that although the trial court correctly invoked the authority of *Nelson*, the trial court failed to apply it properly. Specifically, in awarding costs under section 1032 the trial court did not attempt to apportion the predismissal costs between those

reasonably related to Apryl's loss of consortium claim and those relating to Timothy's claim.  The trial court is directed to undertake that apportionment on remand.

## II.

### *No Error in Calculating Attorney Fees*

A.  *Background*

Under section 1021.4, Timothy's counsel moved for attorney fees in the amount of $253,890.  Timothy argued, "This action was time consuming, complex, and difficult.  Though the action at first blush might be considered a rather common motor vehicle accident wherein liability was admitted, Defendants took a very tenacious defense; and there was no admission of liability until shortly before trial."  In a supporting declaration, Timothy's attorney, Kim Kakadelas, conceded he had not kept contemporaneous billing records:  "[B]ased upon the facts herein, it was always believed that Defendants would make a reasonable offer of settlement for the injuries sustained by [Timothy].  Thus, even though attorney's fees were a part of this claim, billing records were not specifically maintained, so as to necessitate a comprehensive review of the file for the purpose of determining the hours that had been expended in the pursuit of this matter.  . . . I have carefully conducted a comprehensive review of the file in my determination of hours spent herein."

In opposing the motion, Lewis argued, inter alia, "The case was not complex and it moved along efficiently and expeditiously.  There were no motions filed, no ex partes, no continuances of any Court dates, and no other appearance by either party before this Court until the Trial Readiness Conference.  . . .  During the early part of trial, [Lewis's

6

husband] was dismissed from the lawsuit by [Timothy] with prejudice and for a waiver of costs." Lewis also argued, "There is no fee agreement obligating [Timothy] to pay his attorneys by the hour. Furthermore, the only reason fees and costs escalated so high was because [Timothy] sought to establish malice and seek substantially greater damages against Ms. Lewis than what was offered before trial. [Timothy] was unsuccessful, yet [he] wants the court to award his attorneys for their failed effort. If the court were to award attorneys' fees despite no finding of malice in this case, the largest amount that should be awarded to [Timothy] should be the contractual 40% contingency fee, or $72,850.90."

The court tentatively granted Timothy attorney fees in the amount of $188,534.50, but later reduced it. At the start of the hearing on the attorney fees motion, the court noted, "I have spent hours trying to decipher some of the hours that are requested in this case." It later explained to Timothy's counsel, "It was difficult going through all these numbers because you did not keep your records as you went along." Attorney Kakadelas conceded the point: "And I appreciate that, your honor. I do primarily plaintiff's work. That's just not my nature that I record everything. I did as best I can."

At the hearing on the motion, Attorney Kakadelas informed the court that he and his cocounsel would give Timothy 60 percent of any attorney fees recovered: "That's a gift from us, your honor. That's a gift from us. I was representing to you the fact that this case—we feel that Mr. Horton was grossly underpaid as far as what was awarded." The court revised its tentative ruling and instead awarded Timothy reasonable fees of $75,413.80, explaining: "The terms of a contingency fee contract can be considered by

7

the trial court along with the other factors listed in *Serrano v. Priest* (1977) 20 Cal.3d 25, (i.e., the number of hours spent on the case, reasonable hourly compensation for the attorney, the novelty and difficulty of the questions involved, the skill displayed in presenting them, the extent to which the litigation precluded other employment by the attorney, and the contingent nature of the fee award. [Citation.] [¶] Based on the Court's review of the moving and opposition briefs, a thorough review of the billing summaries filed by Plaintiff's counsel and the arguments by counsel at the hearing, the Court concludes that in this particular case, the amount of the contingency fee agreement, although not determinative, is a very strong indicator of the amount of attorney's fees reasonably incurred in prosecuting this action."

B. *Applicable Law*

Section 1021.4 provides: "In an action for damages against a defendant based upon that defendant's commission of a felony offense for which that defendant has been convicted, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff against the defendant who has been convicted of the felony." An appellant has a strong burden to establish an abuse of discretion for an attorney's fee award. " 'The "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court . . ." ' " (*Sommers v. Erb* (1992) 2 Cal.App.4th at p. 1651.) An award of fees " ' "will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Id.* at p. 1651.) A successful plaintiff is ordinarily entitled to "compensation for all hours reasonably spent." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639.) This court affirmed in *Sommers* that "contingent fee contracts are usual in personal injury

cases and a proper factor for the trial court to consider in awarding attorney fees. In any event, because of the contingency fee arrangement there are no exact time sheets. . . ." (*Sommers*, at p. 1651.)

C. *Analysis*

Here, we conclude the trial court, which was in the best position to evaluate the applicable factors, did not abuse its discretion in using the contingency fee agreement as a guideline for awarding attorney fees, particularly in light of Horton's attorneys' admission they did not maintain contemporaneous billing records. The court properly took into account the factors outlined in *Serrano v. Priest*, *supra*, 20 Cal.3d 25. The court noted it was unusual for an attorney fee award to be shared with the client as part of the client's recovery. This raises a reasonable inference the fee request reflected less the actual hours the attorneys worked, and more their attempt to obtain a greater recovery for Timothy. We discern no error by the trial court.

## DISPOSITION

The postjudgment order regarding attorney fees is affirmed, but the order regarding costs is reversed.  On remand, the trial court is directed to apportion the predismissal costs as between those related to Apryl Horton's loss of consortium claim and those related to Timothy Horton's claim, and enter a new order.  The parties are to bear their own costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

10