**METABOLIFE INTERNATIONAL, INC., Plaintiff,**

v.

**Susan WORNICK, George Blackburn, and Hearst–Argyle Television, Inc., Defendants.**

Civil Action No. 99–CV–1095 R(RBB).

United States District Court, S.D. California.

July 19, 2002.

Thomas P. McLish Michael L. Converse, Akin Gump Strauss Hauer and Feld LLP, Washington, DC, Stephen A. Mansfield,

Akin Gump Strauss Hauer and Feld, Los Angeles, CA, for Metabolife International, Inc.

Michael J. Weaver, Latham and Watkins, San Diego, CA Steven J. Comen, Avani S. Kherdekar, Boston, MA, for Susan Wornick, Hearst Argyle–Television, Inc.

Gregory D. Roper, Luce Forward Hamilton and Scripps, San Diego, CA, for George Blackburn.

## ORDER GRANTING DEFENDANT GEORGE BLACKBURN'S APPLICATION FOR ATTORNEY FEES

RHOADES, District Judge.

### I. Overview

The Court dismissed Defendant George Blackburn from this case on November 17, 1999. The Ninth Circuit affirmed the dismissal on September 5, 2001. Blackburn applied for attorney fees and costs pursuant to subsection c of the anti-SLAPP statute, California Civil Procedure Code § 425.16 (" § 425.16"). The Court grants the application in full.

### II. Background

On November 17, 1999, the Court entered a Judgment of Dismissal in favor of the Defendants, including Blackburn. Blackburn then filed a timely application for reimbursement of attorney fees and expenses pursuant to § 425.16(c), which the Court stayed on January 13, 2000, pending resolution of Metabolife's appeal of the Judgment of Dismissal. The Ninth Circuit affirmed the dismissal of Blackburn on September 5, 2001. Blackburn then filed a timely request for appellate attorney fees and expenses. On February 5, 2002, the Ninth Circuit granted Blackburn's request to transfer the application for appellate fees and expenses to the Court.

Metabolife opposes Blackburn's application, contending that § 425.16 provides for recovery of "reasonable" attorney fees and costs to a prevailing defendant on a motion to strike, and that Blackburn's fees and costs are not reasonable.

### III. Discussion

#### A. Legal standard and public policy of California's anti-SLAPP statute: California Civil Procedure Code § 425.16

California's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute provides a mechanism for a defendant to strike civil actions brought primarily to chill the exercise of free speech. § 425.16(b)(1). The California Legislature passed the statute recognizing " 'the public interest to encourage continued participation in matters of public significance . . . and [finding] that this participation should not be chilled through abuse of the judicial process.' " *Metabolife Int'l, Inc. v. Wornick,* 72 F.Supp.2d 1160, 1165 (S.D.Cal.1999) (quoting 5 Witkin, *California Procedure,* § 962, at 422 (4th ed.1997)), *reversed on other grounds by* 264 F.3d 832 (9th Cir.2001) (affirming the dismissal of Blackburn and reversing and remanding as to the other Defendants).

Thus, to deter such chilling, "a prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." § 425.16(c) (emphasis added). The California anti-SLAPP statute should be applied in federal court as it is in state court. *See United States v. Lockheed Missiles & Space Co., Inc.,* 190 F.3d 963, 972–73 (9th Cir.1999). The prevailing party "bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986).

An award of attorney fees and costs must be reasonable. "[S]ection 425.16

similarly authorizes an award of *reasonable* attorney fees to the prevailing party, irrespective of whether the prevailing party is the plaintiff or the defendant. The right of prevailing defendants to recover their reasonable attorney fees under section 425.16 adequately compensates them for the expense of responding to a baseless lawsuit." *Robertson v. Rodriguez,* 36 Cal. App.4th 347, 362, 42 Cal.Rptr.2d 464 (1995) (emphasis in original).

■ A prevailing defendant is also entitled to appellate attorney fees and costs. *See Church of Scientology of California v. Wollersheim,* 42 Cal.App.4th 628, 659–60, 49 Cal.Rptr.2d 620 (1996). The Ninth Circuit and the California Supreme Court have held that counsel should be compensated for time reasonably spent establishing a fee award. *See Davis v. City and County of San Francisco,* 976 F.2d 1536, 1544 (9th Cir.1992), *vacated in part on other grounds by* 984 F.2d 345 (1993); *Serrano v. Unruh,* 32 Cal.3d 621, 639, 186 Cal.Rptr. 754, 652 P.2d 985 (1982).

### B. The Court has broad discretion

■ The Court has broad discretion in determining the reasonable amount of attorney fees and costs to award to a prevailing defendant. *See Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,* 47 Cal. App.4th 777, 785, 54 Cal.Rptr.2d 830 (1996) (citing *Robertson,* 36 Cal.App.4th at 362, 42 Cal.Rptr.2d 464). The Court must have "substantial evidence" to support the fee award. *Macias v. Hartwell,* 55 Cal. App.4th 669, 676, 64 Cal.Rptr.2d 222 (1997) (citing *Church of Scientology,* 42 Cal. App.4th at 658–59, 49 Cal.Rptr.2d 620). "The appropriate test for abuse of discretion is whether the trial court exceed[s] the bounds of reason." *Dove Audio,* 47 Cal.App.4th at 785, 54 Cal.Rptr.2d 830 (quotations and citation omitted).

"The experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." *Ketchum v. Moses,* 24 Cal.4th 1122, 1132, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001) (quotations and citation omitted). The Court has fifty years of experience as a trial attorney and judge, and has applied this experience in determining the reasonableness of the requested attorney fees and costs.

### C. Blackburn's attorney fees and costs are reasonable

As an initial matter, the Court notes that in the present case, it does not need to review Metabolife's attorney fees and costs to determine the reasonableness of Blackburn's attorney fees and costs. The Court notes that Metabolife retained experienced counsel at a large, well-respected law firm who, with vigor and persistence, prosecuted the action.

■ The Court finds that Blackburn has met his burden of establishing the reasonableness of his attorney fees and costs. Metabolife chose to file suit in San Diego—either to harass Blackburn or for its own convenience—although Blackburn lives and works in Boston and the relevant news interview and broadcast occurred in Boston. Additionally, Blackburn's Boston counsel has expertise in the medical issues relevant to the litigation, while his San Diego counsel is a specialist in First Amendment law. Thus, Blackburn's retention of counsel in both Boston and San Diego was reasonable.

#### 1. Success of the attorneys' efforts

Metabolife contends that Blackburn's arguments were not dispositive grounds for the Court's and the Ninth Circuit's rulings in Blackburn's favor. An attorney fee award should be reduced if claimed hours are "excessive, redundant, or otherwise

unnecessary," *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Reasonableness depends in part on "the success of the attorney's efforts." *Church of Scientology*, 42 Cal. App.4th at 659, 49 Cal.Rptr.2d 620.

*Hensley* provides that the district court should look to the important factor of the "results obtained." 461 U.S. at 434, 103 S.Ct. 1933. The *Hensley* court stated that the district court should look to whether the [prevailing party] failed to prevail on claims that were unrelated to the claims on which he succeeded and whether the [prevailing party] achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Id.* Here, Blackburn's defenses (lack of personal jurisdiction, improper venue, and the anti-SLAPP motion) were all part of his motion to dismiss, rather than wholly separate defenses. Federal Rule of Civil Procedure 12(h) required Blackburn to raise the defenses of lack of personal jurisdiction and improper venue in his motion to dismiss with the anti-SLAPP motion or suffer a waiver of those defenses.

"Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Blackburn's attorneys were undisputably successful—the Court dismissed Blackburn and the Ninth Circuit affirmed the dismissal.

## 2. Blackburn can recover fees and costs "incurred in connection with" the anti-SLAPP motion

In a similar vein, Metabolife alleges that Blackburn cannot recover fees and costs

that were not necessary to prevail on the anti-SLAPP motions, relying primarily on *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 39 Cal.App.4th 1379, 46 Cal. Rptr.2d 542 (1995). *Lafayette Morehouse* provides that the California "Legislature intended that a prevailing defendant on a motion to strike be allowed to recover attorney fees and costs only on the motion to strike, not the entire suit." *Id.* at 1383, 46 Cal.Rptr.2d 542. This provision was recently interpreted to "provide for an award of only those fees and costs incurred *in connection with* the motion to strike, not the entire action." *Paul for Council v. Hanyecz*, 85 Cal.App.4th 1356, 1362 n. 4, 102 Cal.Rptr.2d 864 (2001) (emphasis added).

The present case is easily distinguished from *Lafayette Morehouse*. In the underlying case on the merits in *Lafayette Morehouse*, the anti-SLAPP motion applied solely to the libel cause of action, which was only one of seven causes of action in the complaint. 37 Cal.App.4th 855, 861, 44 Cal.Rptr.2d 46 (1995). By contrast, here, the entire lawsuit is subject to the anti-SLAPP motion because all causes of action against Blackburn relate to free speech and all of the activity by Blackburn's attorneys occurred in the context of, and were inextricably intertwined with, the anti-SLAPP motion.[1] All of Blackburn's attorney fees and expenses were incurred "in connection with" the anti-SLAPP motion.

Additionally, the California Legislature amended the anti-SLAPP statute in 1997, mandating that the statute be "construed broadly." *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal.4th 1106, 1119, 81 Cal.Rptr.2d 471, 969 P.2d 564 (1999). *Lafayette Morehouse*, decided in 1995, predates the amendment mandating

---

1. As stated above, if Blackburn had not raised the lack of personal jurisdiction and improper venue defenses in his motion to dismiss with the anti-SLAPP motion, he would have waived those defenses pursuant to Federal Rule of Civil Procedure 12(h).

broad construction. The California Court of Appeal, Third District recently stated in the context of awarding attorney fees and costs (though in a different factual scenario) that the statute "shall be construed broadly." *Rosenaur v. Scherer*, 88 Cal. App.4th 260, 286, 105 Cal.Rptr.2d 674 (2001).

### 3. Metabolife's actions caused Blackburn to incur the attorney fees and costs

Metabolife contends that the attorney fees and costs sought by Blackburn are unreasonable because he could have avoided them, and the entire lawsuit, by disclosing that WCVB–TV quoted him out of context. The Court disagrees. Rather, the Court finds that Metabolife's actions overwhelmingly caused Blackburn to incur the attorney fees and costs.

The following chronology is helpful to understand the relevant events:

- May 11–13, 1999: Television interview with Blackburn broadcast.
- May 11, 13 and June 1, 1999: Metabolife's counsel faxed letters to three media companies designed to deter similar broadcasts on the safety concerns surrounding Metabolife 356. (6/21/99 Janis Decl.Exs. 8–10.)
- May 15, 1999: Metabolife ran a full page ad in *The Boston Globe* attacking Blackburn's credibility ("Boston physician George Blackburn is featured in a report earlier this month where he spews out criticism about Metabolife") and threatening litigation ("We will see Ms. Wornick and WCVB–TV in court"). (8/30/99 Roper Decl.Ex. A.)
- May 20, 1999: Blackburn's counsel Robert O'Regan viewed out-takes (unbroadcast material) with Steve Comen, counsel for WCVB–TV and Wornick. (4/8/02 O'Regan Decl.Ex. 2 at.1.)
- May 24, 1999: Metabolife's counsel Stephen Mansfield sent a letter to Blackburn, O'Regan and the Director of the Beth Israel Deaconess Medial Center, stating:

In sum, we demand an immediate public retraction and correction of each and every false, misleading and damaging statement related to Metabolife 356 that you made during the WCVB–TV broadcasts. Having put you on notice that your statements included false, misleading and damaging information, I inform you that Metabolife will pursue all appropriate legal action against those involved.

(4/8/02 Metabolife Opp'n Ex. A at 7–8.)

- May 24, 1999, shortly before 6 p.m. E.S.T.: Mansfield phoned O'Regan. According to O'Regan, Mansfield told O'Regan that the complaint was ready for filing, named Blackburn as a defendant, and would be filed immediately unless Blackburn made a retraction or clarification. O'Regan replied that he could not respond immediately because he was completing an appellate brief due within in the next day and requested that Mansfield hold off filing the complaint until O'Regan could meet with Blackburn. Mansfield refused. (4/8/02 O'Regan Decl. at 4.) According to Mansfield, Mansfield attempted to ascertain whether Blackburn had been the victim of unfair and deceptive editing by WCVB–TV, proposed a meeting between Mansfield and O'Regan and Blackburn to discuss what was conveyed during the interview. O'Regan refused this offer and refused a request to retract or clarify the statements broadcast. (4/8/02 Metabolife Opp'n Ex. A at 4, Mansfield Decl. ¶¶ 4–5.)
- May 27, 1999, 2:19 p.m. E.S.T.: O'Regan faxed a letter to Mansfield in response to Metabolife's May 24 letter, stating:

Dr. Blackburn will not make any retraction. Just as your client has the right to express opinions about its products, Dr. Blackburn has a corresponding right to express his views regarding the dangers of products containing ephedrine, particularly when those views are well supported by scientific evidence. In our view, the request by Metabolife for a retraction, especially in the face of a growing body of evidence concerning the danger posed by ephedrine in over-the-counter products, is outrageous.... Any legal action which you may be contemplating against Dr. Blackburn would be entirely without merit ... It appears to us that any threats made against Dr. Blackburn are wrongfully motivated by Metabolife's desire to silence those who support the FDA's opinion on ephedrine-based products. It is incumbent upon you to research any claims being made by Metabolife against Dr. Blackburn very carefully under these circumstances. If Metabolife continues asserting that it has scientific studies to support the safety of its product, I would welcome an opportunity to review them. Your demand for retraction refers to none.... Please send me the studies referenced in Metabolife's website as being on file with Metabolife and all of the other claimed studies in Metabolife's possession concerning the safety of its product for sale to the general public. If your client is not willing to share this information within ten (10) days, then I will interpret this reluctance as its acknowledgment that the claims of safety are not supported by valid studies.

(4/8/02 Metabolife Opp'n Ex. A at 10–12.)

- May 27, 1999, 12:51 p.m. P.S.T. (one hour and 32 minutes after O'Regan faxed the above letter to Mansfield): Metabolife filed complaint.

- June 8, 1999 (postponed to June 29, 1999): Blackburn scheduled (since early spring) to testify before the Joint Committee on Healthcare at the Massachusetts Legislature concerning a bill that would require the Massachusetts Department of Public Health to study the need for regulation of over-the-counter diet supplements. (6/21/99 Blackburn Decl. at 3 ¶ 7.)

- September 7, 1999: Metabolife conceded that "the literal words Dr. Blackburn used ('you can die from taking this product') cannot be proved false." (9/7/99 Metabolife's Resp. to Ct.'s Order on Preparation for Sept. 8 Hr'g at 6.) (*See also* 9/20/99 Metabolife's Supp.Br. Re: WCVB's Deceptive Editing at 3.)

- September 15, 1999: Metabolife received the Declaration of Steven Comen (counsel for WCVB–TV and Wornick), revealing the context (i.e., abuse/misuse of the product) surrounding Blackburn's "you can die" statement. (6/14/02 Metabolife's Supp. Submission; 9/14/99 Comen Decl. at 2.)

- September 20, 1999: Metabolife concedes that "*if* discovery shows that Dr. Blackburn was simply a victim of WCVB's editing, Metabolife *will dismiss voluntarily* its claims against Dr. Blackburn." (9/20/99 Metabolife's Supp.Br. Re: WCVB's Deceptive Editing at 6 (emphasis added) (characterized in Metabolife's 4/8/02 Opp'n at 4 as "stating that, with a modicum of discovery, Blackburn *might be* dismissed from the case" (emphasis added))).

- November 17, 1999: District court dismissed Blackburn.

- November 30, 1999: Metabolife appealed the district court's decision, including the dismissal of Blackburn.

- May 9, 2001: Oral argument before the Ninth Circuit where Mansfield stated in response to questioning by Judge Rymer: "What was broadcast [was] a false depiction significantly of Dr. Blackburn's conclusion.... We are fully prepared upon remand with adequate discovery with Dr. Blackburn *to consider* removing him from this case." (4/9/02 O'Regan Supp. Decl.Ex. 2 at 3 (emphasis added).)

- September 5, 2001: Ninth Circuit affirmed the dismissal of Blackburn.

In sum, the Court finds that Metabolife's actions speak louder than its words. As early as September 7, 1999, in response to the Court's questions, Metabolife acknowledged that it could not prove that Blackburn's "you can die" statement was false. Metabolife did not dismiss Blackburn at that time. Eight days later, on September 15, 1999, Metabolife knew that Blackburn's "you can die" statement had been taken out of context. Metabolife did not dismiss Blackburn at that time. On November 17, 1999, the Court dismissed Blackburn from the suit. Metabolife did not accept Blackburn's dismissal at that time. Rather, Metabolife appealed the decision. On May 9, 2001, at oral argument before the Ninth Circuit in response to questioning by Judge Rymer, Metabolife conceded its belief that what was broadcast was a false depiction of Blackburn's statement. (4/9/02 O'Regan Supp.Decl.Ex. 2 at 1–2.) Metabolife did not dismiss Blackburn at that time. Finally, on September 5, 2001, the Ninth Circuit affirmed

the Court's dismissal of Blackburn—almost two years after Metabolife acknowledged the truth of the "you can die" statement and knew that the statement was taken out of context. Thus, the Court finds that Metabolife never intended to dismiss Blackburn from the lawsuit, and any actions Metabolife alleges that Blackburn could have or should have taken were *de minimis* in comparison to Metabolife's legal and public relations blitzkrieg of Blackburn (and anyone else who questioned, or was considering questioning, the safety of Metabolife 356).

This legal and public relations campaign also consisted of the faxed letters to three media companies designed to deter similar broadcasts on the safety of Metabolife 356 (e.g., "We are currently reviewing subsequent news stories to determine if legal action is necessary"). (6/21/99 Janis Decl. Ex. 9.) It also included the full page ad in *The Boston Globe* attacking Blackburn's credibility and threatening litigation. Also included were Metabolife's phone and faxed warnings of litigation to Blackburn's counsel if Blackburn did not make a full public retraction and correction of the statements he made during the broadcasts. Finally, it involved the filing of the Complaint on May 27, 1999 in San Diego—across the country from Blackburn's home of Boston—less than two weeks before Blackburn was scheduled to testify before the Massachusetts Legislature.[2]

### a. Discovery would not have helped Metabolife prove its case

Despite Metabolife's motion to compel discovery, the Court ultimately imposed a stay on discovery. However, discovery

---

**2.** The Court addressed Metabolife's motives for filing the lawsuit, finding that "Metabolife has sued Defendants for their public contributions to [the debate over the safety of ephedrine-based dietary supplements]." *See Metabolife*, 72 F.Supp.2d at 1163. However, although the issue of motive is currently being considered by the California Supreme Court, at this point, a SLAPP defendant has no burden of proving that "the plaintiff was motivated by an improper purpose." *Equilon Enterprises LLC v. Consumer Cause, Inc.*, 102 Cal.Rptr.2d 371, 376 (2000), *petition for review granted and opinion superseded by* 106 Cal.Rptr.2d 80, 21 P.3d 758.

would not have helped Metabolife prove its case.

Two of Blackburn's statements in the broadcast were at issue in the district court: (1) the "you can die" statement, and (2) the statement that Metabolife lacks "credibility." Regarding the "you can die" statement, the Court held: "(1) Metabolife has not provided admissible prima facie evidence that this statement is false, and (2) Blackburn's statement is entitled to First Amendment protection as a 'rational interpretation' of a conflicting and ambiguous source." *Metabolife*, 72 F.Supp.2d at 1166–67, 1170.[3] Regarding the statement that Metabolife lacks "credibility," the Court held: "this statement is non-actionable opinion." *Id.* at 1175. The Court did not base its decision on whether there was actual malice. *Id.* at 1166, 1171 n. 13.

In affirming the dismissal of Blackburn, the only issue addressed by the Ninth Circuit on appeal was the "you can die" statement. *Metabolife*, 264 F.3d at 837. The Ninth Circuit found that "Metabolife does not dispute the validity of [Blackburn's 'you can die' statement, viewed in its entirety] anywhere in its pleadings. Accordingly, the dismissal of the causes of action against Dr. Blackburn is affirmed." *Id.* at 847. The Ninth Circuit also held that "[t]he district court's alternative free speech rulings are REVERSED as to all defendants except Dr. Blackburn. The dismissal of the causes of action against Dr. Blackburn is AFFIRMED in light of his complete statement." *Id.* at 850.

Based on these rulings, any discovery that the Court could have permitted Metabolife to take would not have "discovered" anything that would have helped it prove its case against Blackburn. First, regarding the falsity of the "you can die" state-

ment, Metabolife conceded that "the literal words Dr. Blackburn used ('you can die from taking this product') cannot be proved false." (9/7/99 Metabolife's Resp. to Ct.'s Order on Preparation for Sept. 8 Hr'g at 6; *see also* 9/20/99 Metabolife's Supp.Br. Re: WCVB's Deceptive Editing at 3.) Metabolife was aware that it could not establish a prima facie case on the issue of falsity as to Blackburn's statement; no amount of discovery could have proved otherwise.

Second, regarding Blackburn's First Amendment rights, the Court found that the "you can die" statement was unactionable First Amendment speech. Metabolife conceded that " 'the safety of products intended for human consumption is a matter of public concern' and agrees that the statements challenged were made in a public forum." *Metabolife*, 264 F.3d at 840; *see also Metabolife*, 72 F.Supp.2d at 1165. Thus, discovery on this issue would not have proved anything, as Blackburn had a protected First Amendment right to make the statement.

Third, regarding the "credibility statement," the Court found that it was an unactionable opinion, and this ruling was not addressed on appeal. Therefore, this statement is not provable as true or false, and discovery as to this issue would not have proved anything of relevance.

Finally, as the case was not decided on the issue of actual malice, any discovery on this topic would have been inconsequential as well.

**b. Any failure to mitigate by Blackburn was *de minimis* compared to Metabolife's actions**

The Court recognizes that Blackburn's counsel viewed the out-takes (unbroadcast

---

3. Although, as stated, the result is what matters, the Court points out that contrary to Metabolife's assertion that the Court did not base its decision on grounds raised by Black-

burn or the other Defendants, the Court ruled, in part, on Blackburn's arguments that his statements were substantially true and protected opinion.

material) on May 20, 1999. Metabolife harps on the fact that Blackburn waited a year, until the case was on appeal, before disclosing that his statements were taken out of context. However, even if Blackburn had provided the out-takes to Metabolife in May,[4] it is undisputed that Metabolife knew, as early as September 15, 1999, the context of Blackburn's statements, and still chose not to dismiss Blackburn. Any mitigation that Blackburn could have accomplished would have been *de minimis* compared to Metabolife's actions. Moreover, based on Metabolife's conduct throughout this litigation, the Court is skeptical that even if Metabolife had viewed the out-takes in May, Metabolife would not have filed the case against Blackburn.

Moreover, Metabolife filed a broad complaint against Blackburn, going beyond the context of the "you can die" statement. (Compl. ¶¶ 28, 29, 30, 32 and 45, containing allegations that go beyond context and implication; Compl. ¶¶ 38–39, containing allegations regarding the "credibility" statement.) Therefore, any possible full explication by Blackburn of the out-takes would not have defeated Metabolife's charges, as the Complaint does not limit the allegations against Blackburn to the context and implications of the "you can die" statement. However, even if Blackburn somehow knew that the only charges against him relied on the context and implications of the "you can die" statement, Metabolife knew the context of the "you can die" statement on September 15, 1999 and chose to continue pursuing the litigation against Blackburn.

Metabolife also argues that a defendant has a duty to mitigate damages even if the plaintiff is not completely blameless in bringing the case. *See Pollution Control Industries of America, Inc. v. Van Gundy,* 21 F.3d 152, 156 (7th Cir.1994). Although the Court acknowledges the validity of this principle, *Pollution Control* is easily distinguishable, as the Seventh Circuit characterized the conduct of defense counsel in that case as "egregious." *Id.* Defense counsel in *Pollution Control* failed to inform the plaintiff of the simple fact of the defendant's citizenship, and instead chose to pursue a more complicated and costly lack of personal jurisdiction defense. *Id.* By contrast, here, as stated, the Court finds that any failure to mitigate by Blackburn was *de minimis* when compared to Metabolife's aggressive litigation strategy and did not contribute to the fees and costs incurred by Blackburn.

## IV. Conclusion

The Court grants Blackburn's application for attorney fees and costs in full for a total of $318,687.99, as follows:

- For Luce Forward—billed fees of $90,270, unbilled fees of $4,410, expenses of $3,893, fee application fees of $13,680, for a total of $112,253.

- For Burns & Levinson—fees of $136,302.50, expenses of $5,415.61, appellate fees of $39,636.25, appellate expenses of $8,859.89, fee application fees of $16,220.74, for a total of $206,434.99.

**IT IS SO ORDERED.**

4. The out-takes were the privileged material of WCVB–TV pursuant to California Constitution Article 1, § 2(b) and California Evidence Code § 1070. In Massachusetts, the reporter's privilege is not statutory but is recognized as a First Amendment issue. *See, e.g., Sinnott v. Boston Retirement Bd.,* 402 Mass. 581, 586, 524 N.E.2d 100 (1988).