Christina SMITH, et al., Plaintiffs,

v.

**LEVINE LEICHTMAN CAPITAL PARTNERS, INC., et al., Defendants.**

No. C 10–00010 JSW.

United States District Court, N.D. California.

June 29, 2010.

Paul Arons, Law Office of Paul Arons, Friday Harbor, WA, Deepak Gupta, Public Citizen Litigation Group, Washington, DC, Irv Ackelsberg, John James Grogan, Langer Grogan & Diver, P.C., Philadelphia, PA, Ronald Wilcox, Attorney at Law, San Jose, CA, for Plaintiffs.

Scott Michael Pearson, Brian C. Frontino, Stroock & Stroock & Lavan LLP, Michael Andrew Taitelman, Joshua G. Blum, Freedman & Taitelman LLP, Los Angeles, CA, Douglas Robert Schwartz, Schwartz & Cera LLP, San Francisco, CA, for Defendants.

## ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS AND MOTIONS TO STRIKE

JEFFREY S. WHITE, District Judge.

Now before the Court are the motions to dismiss filed by Defendants Levine Leichtman Capital Partners, Inc. and Levine Leichtman Capital Partners III, L.P. (collectively, "LLCP") and Defendant National Corrective Group, Inc. ("NCG"), the motion to strike pursuant to Federal Rule of Civil Procedure 12(f) filed by Defendants Michael Schreck ("Schreck") and Brett Stohlton ("Stohlton"), the motion to strike pursuant to California Code of Civil Procedure 425.16 filed by NCG, and the joinders

by Schreck and Stohlton in the other parties' motions to dismiss and strike and LLCP's joinder in NCG's motion to strike. Having carefully reviewed the parties' papers, considered their arguments and the relevant authority, and good cause appearing, the Court hereby denies all of Defendants' motions with the exception that the Court will dismiss Plaintiffs' misrepresentations claims against LLCP, Schreck and Stohlton with leave to amend.[1]

## BACKGROUND

Plaintiffs Christina Smith, Lois Artz, Ashley Henderson, Jana Sperling and Toni Nelson (collectively, "Plaintiffs") filed this purported class action against Defendants asserting claims under the Fair Debt Collection Practices Act ("FDCPA") and RICO, among other claims. According to Plaintiffs, NCG is a private debt-collection company that specializes in collecting dishonored checks on behalf of retail-merchant payees. NCG conducts this activity under the guise of being an official "district attorney bad check restitution program." (First Amended Complaint ("FAC"), ¶ 2.) Until April 2009, the company was known as American Corrective Counseling Services ("ACCS"), but was reorganized as NCG through bankruptcy. (*Id.*)

ACCS, and now NCG, has agreements with over two dozen California district attorneys to administer a bad check diversion program. The exemplar agreement attached to the FAC provides that the District Attorney of San Mateo wanted to provide a pretrial diversion program consistent with 15 U.S.C. § 1692p (the "Act") and retained ACCS to provide consulting services and to staff and operate the District Attorney diversion program seminars. (FAC, Ex. A.) According to the agreement, the district attorney will determine if probable cause of a bad check violation exists under state law and that contact with the alleged offender for purposes of participation in the diversion program is appropriate and consistent with the Act. However, the agreement further provides that district attorney's the determination of probable cause shall be communicated by its authorized and approved intake, dispute resolution, and prosecution review criteria established prior to the start of the diversion program. (*Id.*, Ex. A at ¶ (v)(c); *see also* Ex. A at ¶ 4.)

The district attorney will approve, in advance, the format, content, and frequency of any oral or written communication with participants in the diversion program and ACCS may mail the written communications concerning the payment of fees "under its assigned administrative responsibilities per [the] Agreement." (*Id.*, Ex. A at ¶¶ (v)(e), (f).) Participants will be directed to respond to the district attorney's mailing address or a post office box held in the district attorney's name. (*Id.*, Ex. A at ¶¶ (v)(g).)

The agreement provides that ACCS employees shall remain the employees of ACCS, not the district attorney, but that while performing the administrative support services under the agreement, ACCS' employees shall be subject to the managerial control of the district attorney. (*Id.*, Ex. A at ¶ 13.)

Attached to the FAC is a document entitled "San Mateo County District Attorney Bad Check Restitution Program In-

---

1. The Court GRANTS the requests to take judicial notice filed by Defendants. However, the Court is only taking judicial notice of the fact that these documents were filed, and not of the truth of the statements contained therein. The Court DENIES NCG's request to file an objection to the statement of recent decision filed by Plaintiffs. The Court need not rule on Plaintiffs' or NCG's evidentiary objections because the Court did not need to consider such evidence in order to resolve NCG's motion to strike.

take Criteria," which provides that checks that remain unpaid after ten days of the victim taking reasonable steps to provide notice to the check writer are eligible for the program. (*Id.*, Ex. B.) Checks that have been partially repaid to the victim and checks dishonored due to bank error or failure to notify the check writer of the bank adjustment, among other categories of checks, are ineligible for the program. (*Id.*) According to this document, this eligibility criteria is the definition of probable cause. (*Id.*)

Also attached to the FAC is a document entitled "San Mateo County District Attorney Bad Check Restitution Program Prosecution Review Criteria." (*Id.*, Ex. B.) This form provides that only checks greater than $250 may be forwarded for prosecution review and provides that written notice provided by the victim is required for prosecution review, unless the checks were written on a closed account. (*Id.*) Checks written by persons living out of state, checks dishonored due to a stop payment order, checks that have been partially paid to the program, and checks that are included in a bankruptcy petition shall not be forwarded for prosecution review. (*Id.*)

The District Attorney also approved a series of core demand letters, as well as a core letter series timing schedule. (FAC, ¶ C.) The schedule provides that the "Official Notice" may be sent upon receipt of a crime report and that follow up letters may be sent if no response is received within a specified amount of time. (*Id.*) The Official Notice, sent on district attorney letter head, states that "This Office has received a report(s) of criminal activity alleging that you have violated California Penal Code Section 476(a), 'Passing a Worthless Check.' A conviction under this statute is punishable by up to one (1) year in the county jail, or in state prison, and up to $1,000 in fines." (*Id.*) The notice fur-

ther provides "you may avoid a court appearance by participating in the San Mateo County District Attorney Diversion Program," which includes paying restitution on the reported checks, all fees, and attending a financial responsibility class. The district attorney "will not initiate prosecution proceedings against individuals who comply with the Diversion Program." (*Id.*) The notice states: "Failure to pay in full and schedule the class within TEN (10) DAYS from the date of this Notice may result in your case being forwarded for criminal prosecution." (*Id.*)

The letters actually received by Plaintiffs differ slightly. For example, the letter sent to Artz states that:

> **The Sonora County District Attorney's Office has received a CRIME REPORT** *alleging you have violated Penal Code 476(a) of the California State Statute: Issuing a Worthless Check* . . . . .
>
> *YOU MAY AVOID A COURT APPEARANCE if you agree to enroll in a special Bad Check Restitution Program* . . . .
>
> . . .
>
> **Program enrollment is OPTIONAL.** You may wish to consult an attorney to obtain legal advice about your rights in regards to this matter. . . .
>
> If you successfully comply . . . ***THERE WILL BE NO CRIMINAL, POLICE, OR COURT RECORD OF THIS MATTER!***
>
> WARNING—Completion of the Bad Check Restitution Program is valid ONLY if you comply with ALL District Attorney requirements. Failure to comply with payment of restitution and fees, or class attendance may subject you to criminal court proceedings.

(*Id.*, Ex. D (emphasis in original).) The letter is signed by the Chief Deputy District Attorney. (*Id.*)

Smith received a letter entitled "WARNING OF CRIMINAL CHARGES." This letter states:

Our records indicate that you have failed to respond to the District Attorney's Official Notice.

Your failure to respond immediately may result in the filing of criminal charges. Call this Office by 05/03/2009 if you wish to prevent this action.

The letter is signed by the District Attorney. (*Id.*, Ex. F (emphasis in original).) Smith also received a letter stating: "Please contact this Office to clear a report(s) of criminal activity. Your immediate cooperation is required to avoid potential criminal prosecution." This letter was sent on San Mateo County District Attorney letter head. (*Id.*, Ex. G.) In addition, Smith received letters entitled "SECOND WARNING OF CRIMINAL CHARGES," "THIRD WARNING OF CRIMINAL CHARGES," "THIRD NOTICE OF FAILURE TO COMPLY," "NOTICE OF FAILURE TO COMPLY," and "FINAL NOTICE: INITIATING PROSECUTION REVIEW." (*Id.*, Exs. H, I, J, and K (emphasis in original).) The Final Notice states: "Due to your failure to comply with the requirements of the Diversion Program as specified in previous Notices, this Office will now initiate a review of your case for possible criminal charges under California Penal Code Section 476(a), 'Passing a Worthless Check.'" (*Id.*, Ex. K.) This letter was sent on San Mateo County District Attorney letter head and is signed by the District Attorney. (*Id.*)

According to Plaintiffs, NCG is the one who actually sends out these notices. (*Id.*, ¶ 3.) Plaintiffs allege that these notices falsely represent that a district attorney has received a crime report about the dishonored checks and that a prosecution will likely ensue unless the consumer pays the amount of the check plus over $200 in fees to NCG. (*Id.*) Plaintiffs further allege that the referrals of dishonored checks to NCG are actually made directly by national retail merchants without any prior prosecutorial review. (*Id.*)

According to Plaintiffs, by sending out these notices ACCS, and now NCG, make the following misrepresentations: (1) that the ACCS/NCG written and verbal communications are from the local district attorney and/or from persons employed within the district attorneys' office; (2) that, preceding the communication to the consumer, the district attorney named in the notice received a crime report alleging that the consumer committed a violation of Cal. Pen. Code § 476a; (3) that the consumer meets the legal definition of a person who can enroll in a "bad check diversion program" and has been properly referred to such a program by a district attorney; (4) that payment of a "program" or "class" fee—demanded in addition to the "administrative" and "returned item" fees—is an authorized component of an official "bad check diversion program" and that a district attorney is actually demanding such payment; and (5) that a failure to pay such fees and to attend the ACCS/NCG class will likely trigger a criminal prosecution, which could result in imprisonment and a substantial fine. (FAC, ¶ 66.)

The Court will address additional specific facts as required in the analysis.

## ANALYSIS

### A. Applicable Legal Standards.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v.*

*Kennedy,* 794 F.2d 478, 481 (9th Cir.1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted. *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must "provide the grounds of [its] entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations and citations omitted). The pleading must not merely allege conduct that is conceivable. Rather, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955.

■■■■ "The court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. (12)(f). Immaterial matter "is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.,* 217 F.Supp.2d 1028, 1032 (C.D.Cal.2002) (internal citations and quotations omitted). Impertinent material "consists of statements that do not pertain, or are not necessary to the issues in question." *Id.* Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *Colaprico v. Sun Microsystems Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991). "[M]otions to strike

should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991). Ultimately, the decision as to whether to strike allegations is a matter within the Court's discretion. *Id.*

California's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute provides a mechanism for a defendant to strike civil actions brought primarily to chill the exercise of free speech. Cal. Code Civil Proc. § 425.16(b)(1); *see also Metabolife International, Inc. v. Wornick,* 213 F.Supp.2d 1220, 1221 (S.D.Cal. 2002). The California Legislature passed the statute and explicitly recognized "the public interest to encourage continued participation in matters of public significance ... and [found] that this participation should not be chilled through abuse of the judicial process." *Metabolife,* 213 F.Supp.2d at 1221 (citations omitted). Thus, to deter such chilling, a prevailing defendant on a special motion to strike shall be entitled to recover his or her reasonable attorney's fees and costs. *Id.,* citing Cal. Code Civ. Proc. § 425.16(c).

Section 425.16 provides, in relevant part, that

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any

written or oral statement or writing made before a ... judicial proceeding, or any other official proceeding authorized by law....

Cal. Code Civ. Proc. §§ 425.16(b)(1); 425.16(e).

A special motion to strike a SLAPP suit involves a two-step analysis. First, the court must decide whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. *See, e.g., City of Cotati v. Cashman,* 29 Cal.4th 69, 76, 124 Cal.Rptr.2d 519, 52 P.3d 695 (2002). The defendant may meet this threshold burden by showing that the act which forms the basis for the plaintiff's cause of action was a written or oral statement made before a judicial proceeding. *See Church of Scientology of California v. Wollersheim,* 42 Cal.App.4th 628, 646, 49 Cal.Rptr.2d 620 (1996). Courts examine the "principal thrust or gravamen" of the claims at issue to determine whether they arise from protected activity. *Mann v. Quality Old Time Service, Inc.,* 120 Cal. App.4th 90, 103, 15 Cal.Rptr.3d 215 (2004). "Where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.15 unless the protected activity is 'merely incidental' to the unprotected conduct." *Id.* (quoting *Scott v. Metabolife Int'l, Inc.,* 115 Cal.App.4th 404, 419, 9 Cal.Rptr.3d 242 (2004)).

If the defendant establishes a prima facie case that the claims arise from protected activity, the burden then shifts to the plaintiff to establish a probability that the plaintiff will prevail on the claim. *Wollersheim,* 42 Cal.App.4th at 646, 49 Cal.Rptr.2d 620; *see also Cotati,* 29 Cal.4th at 76, 124 Cal.Rptr.2d 519, 52 P.3d 695. In making its determination, the trial court is required to consider the pleadings and supporting and opposing affidavits stating the facts upon which liability or defense is based. *See* Cal. Code Civ. Proc. § 425.16(b).

## B. NCG's Motion to Dismiss.

NCG moves to dismiss Plaintiffs' amended complaint on the following grounds: (1) efforts to obtain criminal restitution through a State's criminal bad check diversion program do not fall within the scope of the FDCPA; (2) NCG's conduct is expressly authorized by California law and, thus, is not actionable; (3) NCG has qualified immunity with respect to the state law claims asserted against it; and (4) even if the FDCPA does apply, principles of federalism and comity mandate that the Court abstain from exercising jurisdiction over this claim.

Although the FDCPA does contain a safe harbor provision, based on Plaintiffs' allegations, Defendants failed to comply with its statutory requirements. Therefore, at this procedural stage, the safe harbor provision does not preclude Plaintiffs' FDCPA claim. Again, NCG's second argument assumes that it has actually complied with all the statutory requirements. However, according to Plaintiffs' allegations, NCG's conduct does not comply with state or federal law. With respect to NCG's third argument, the Ninth Circuit has clearly held that qualified immunity is not available to private entities. NCG's reliance on a state law case disagreeing with the Ninth Circuit and providing qualified immunity to private entities on a federal claim is misplaced. Ninth Circuit authority is binding on this Court. NCG has not provided any authority demonstrating that qualified immunity is available under California law for state-law claims. Finally, NCG has not demonstrated that the Court may abstain from exercising jurisdiction over this claim. Accordingly, the Court DENIES

NCG's motion to dismiss Plaintiffs' FDCPA claim.

Schreck and Stohlton joined in NCG's motion. In their joinder, Schreck and Stohlton submit substantive arguments against Plaintiffs' FDCPA claim against them.[2] Schreck and Stohlton argue that Plaintiffs do not allege sufficient facts against them to hold them personally liable under the FDCPA. More specifically, they urge the Court to follow the rule adopted by the Seventh Circuit, that the corporate veil must be pierced before personal liability may be imposed on an officer. *See Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir.2000).

However, although the Ninth Circuit has not addressed this issue yet, "[t]he Sixth Circuit and the majority of district courts that have considered this issue, including all such district courts in the Ninth Circuit, have concluded that employees can be held personally liable under the FDCPA" without piercing the corporate veil. *Robinson v. Managed Accounts Receivables Corp.*, 654 F.Supp.2d 1051, 1059 (C.D.Cal.2009) (citing cases); *see also Schwarm v. Craighead*, 552 F.Supp.2d 1056, 1070 (E.D.Cal.2008) (citing cases). The Court agrees with the reasoning in *Robinson* and *Schwarm* and, thus, finds that employees may be held liable under the FDCPA without piercing the corporate veil.

To allege a FDCPA claim against Schreck and Stohlton, Plaintiffs must allege that they (1) materially participated in collecting the debt at issue; (2) exercised control over the affairs of the business; (3) were personally involved in the collection of the debt at issue, or (4) were regularly engaged, directly or indirectly, in the collection of debts. *See Schwarm*, 552 F.Supp.2d at 1073. Plaintiffs have alleged facts sufficient to show that Schreck and Stohlton exercised control over the affairs of ACCS, and now NCG, and/or that they were regularly engaged, directly or indirectly, in the collection of debts. Accordingly, the Court will not dismiss Plaintiffs' FDCPA claim against Schreck or Stohlton.

## C. LLCP's Motion to Dismiss.

### 1. Plaintiffs' RICO Claims.

Plaintiffs assert a RICO claim under 18 U.S.C. § 1962(c) against Schreck and Stohlton and against LLCP under 18 U.S.C. § 1962(d) for conspiring to violate Section 1962(c). LLCP argues that Plaintiffs fail to allege an underlying claim under Section 1962(c) and, thus, that they fail to allege a claim for conspiracy under Section 1962(d). Schreck and Stohlton join in LLCP's motion and argue that Plaintiffs fail to allege sufficient conduct by them to state a claim under Section 1962(c). LLCP further moves to dismiss the Section 1962(d) claim on the grounds that Plaintiffs fail to sufficiently allege its involvement in a conspiracy.

The essential elements of a civil RICO violation under Section 1962(c) are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004). " 'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a

---

**2.** In the future, the parties are admonished that if any of them seek to assert substantive arguments in support of a motion, the Court will only consider such arguments if raised in a properly noticed motion. A joinder should be reserved solely for joining in another party's motion, without argument.

criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986). To allege a violation of mail fraud under § 1341, "it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Id.* (citing *Schreiber,* 806 F.2d at 1400). To be considered part of the fraud, the use of the mails need not be an essential element of the scheme. *Schmuck v. United States*, 489 U.S. 705, 710, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). "It is sufficient for the mailing to be 'incident to an essential part of the scheme' or 'a step in [the] plot.'" *Id.* (citing *Badders v. United States*, 240 U.S. 391, 394, 36 S.Ct. 367, 60 L.Ed. 706 (1916)).

■ Federal Rule of Civil Procedure 9(b) applies to civil RICO fraud cases and requires that, for acts of fraud, "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir.1989) (quoting *Schreiber Distrib. Co.*, 806 F.2d at 1401). However, the particularity requirements of Rule 9(b) must be read in harmony with the requirement to make out a "short and plain" statement of the claim. Fed. R. Civ. P. 8(a)(2). Thus, the particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.1989); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be

specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.") (internal quotation marks and citations omitted). Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)).

■ The Court finds that Plaintiffs have sufficiently alleged at least two predicate acts of mail fraud. Plaintiffs attach letters to their complaint, allegedly sent by ACCS, which is now NCG, stating that crime reports have been received by the district attorneys' offices. Plaintiffs further allege that at the time that these letters were sent, no criminal report had been sent to the district attorneys' offices. Plaintiffs also attach a letter sent to Smith stating: **"FINAL NOTICE: INITIATING PROSECUTION REVIEW."** The letter, sent on San Mateo County District Attorney letter head and signed by the District Attorney, further states that "this Office will now initiate a review of your case for possible criminal charges under California Penal Code Section 476(a)." (FAC, Ex. K (emphasis in original).) However, the prosecution review criteria signed by the San Mateo County District Attorney establishes that only dishonored checks greater than $250 may be forwarded to the District Attorney's office for prosecution review. (*Id.*, Ex. B.) The alleged dishonored check written by Smith was only for $23.14, substantially under the $250 limit. (FAC, ¶ 82.) Despite the fact that Smith's dishonored check did not qualify to be forwarded to the District Attorney's office for prosecution review, the letter, allegedly sent by ACCS, which is now NCG, falsely states that the District Attorney's office was initiating a review of her case for

possible criminal charges. Such allegations are sufficient to allege a pattern of mail fraud.

 Moreover, the Court finds that Plaintiffs' allegations against Schreck and Stohlton are sufficient to state a claim under Section 1692(c). To be liable under Section 1962(c), a defendant must "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Contrary to Schreck and Stohlton's characterization of Plaintiffs' allegations, Plaintiffs' FAC does not merely contain conclusory allegations against them. Plaintiffs allege that Schreck and Stohlton conducted the affairs of the "enterprise." According to Plaintiffs, Schreck and Stohlton were the officers that directed and managed the fraudulent scheme of ACCS, and now NCG. (FAC, ¶¶ 15, 16, 26, 31, 159.) Plaintiffs allege that Schreck was the president of the enterprise and executed many of the company's agreements with district attorneys. (*Id.,* ¶ 159.) With respect to Stohlton, Plaintiffs allege that he was the Vice President of and ran the day-to-day operations of the enterprise. (*Id.*) Such allegations are more than sufficient.

 "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. America Online, Inc.,* 208 F.3d 741, 751 (9th Cir.2000). The defendants "must also have been 'aware of the essential nature and scope of the enterprise and intended to participate in it.'" *Id.* (quoting *Baumer v. Pachl,* 8 F.3d 1341, 1346 (9th Cir.1993)). Allegations that the defendants knowingly agreed to facilitate a scheme which includes the operation or management of a RICO enterprise are sufficient to state a claim under Section

1962(d). *United States v. Fernandez,* 388 F.3d 1199, 1230 (9th Cir.2004). Here, Plaintiffs have sufficiently alleged that LLCP agreed to facilitate a RICO scheme with knowledge of the scheme's purpose and intent to participate in it.

**2. Plaintiffs' FDCPA Claim.**

Plaintiffs sufficiently allege a FDCPA claim against LLCP. As discussed above, to state a claim under the FDCPA claim, Plaintiffs must allege that LLCP (1) materially participated in collecting the debt at issue; (2) exercised control over the affairs of the business; (3) were personally involved in the collection of the debt at issue, or (4) were regularly engaged, directly or indirectly, in the collection of debts. *See Schwarm,* 552 F.Supp.2d at 1073. Plaintiffs have alleged facts sufficient to show that LLCP exercised control over the affairs of ACCS, and now NCG. Accordingly, the Court will not dismiss Plaintiffs' FDCPA claim against LLCP.

**3. Plaintiffs' Claim Under California Business and Professions Code § 17200.**

LLCP, and Schreck and Stohlton in their joinder, argue that Plaintiffs' claim under California Business and Professions Code § 17200 should be dismissed because there is no vicarious liability under this statute. However, because the Court has found that Plaintiffs have alleged claims based on LLCP, Schreck and Stohlton's direct and personal involvement, the Court will not dismiss Plaintiffs' Section 17200 claim on this ground.

**4. Plaintiffs' Misrepresentation Claims.**

LLCP, and Schreck and Stohlton in their joinder, argue that Plaintiffs' claim for intentional and negligent misrepresentation should be dismissed because Plain-

tiffs have not alleged any misrepresentations made by them. Plaintiffs rely on the "group published document" doctrine to argue that they may presume the letters with misrepresentations were the collective action of these defendants.

 Under the "group published document" doctrine, "[i]n cases of corporate fraud where the false and misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers." *In re GlenFed, Inc. Securities Litigation*, 60 F.3d 591, 593 (9th Cir.1995) (quoting *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987)). "Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations." *Id.* In *GlenFed*, the court held that the plaintiffs failed to allege that the outside directors "participated in the day-to-day corporate activities, or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times" to show that it was reasonable to presume that the corporate documents were collectively devised by these outside directors. *Id.* Under such circumstances, the court held that the plaintiffs could not rely on the "group published document" doctrine. *Id.*

 Here, Plaintiffs have not alleged sufficient facts to show that, even if LLCP, Schreck and Stohlton did not sign the individual letters that were sent out, they participated in creating or approving the form letters which contained substantially similar misrepresentations. Therefore, the Court will grant LLCP's motion, and Schreck and Stohlton's joinder, to dismiss Plaintiffs' misrepresentation claims. How-

ever, the Court will provide Plaintiffs leave to amend these claims.

## D. Schreck and Stohlton's Motion to Strike Pursuant to Fed. C. Civ. P. 12(f).

Schreck and Stohlton move to strike portions of Plaintiffs' FAC as immaterial or impertinent. Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *Colaprico*, 758 F.Supp. at 1339. "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Id.* Upon consideration of Schreck and Stohlton's motion, the Court does not find that it is clear that the matter they seek to strike could have no possible bearing on the subject matter of the litigation. Accordingly, the Court declines to exercise its discretion to strike portions of Plaintiffs' FAC and denies Schreck and Stohlton's motion.

## E. NCG's Motion to Strike Pursuant to Cal. Code Civ. Proc. § 425.16.

 California's anti-SLAPP statute provides a mechanism for a defendant to strike civil actions brought primarily to chill the exercise of free speech. Cal. Code Civil Proc. § 425.16(b)(1). However, section 425.17(b) provides an exception to the application of the anti-SLAPP statute. *See* Cal. Code Civil Proc. § 425.17(b). Section 425.17(b) provides that the anti-SLAPP law does not apply:

> to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist:
> (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A

claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision.

(2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.

(3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

*Id.* The Court finds that Plaintiffs have demonstrated that all requirements of 425.17(b) are satisfied here.

NCG's only argument to the contrary is that Plaintiffs purportedly seek statutory damages under the FDCPA that are available only to named Plaintiffs, and not to the entire class. Thus, according to NCG, Plaintiffs are seeking relief for themselves that is greater than and different to the relief sought for the entire class. (NCG Mot. to Strike at 15.) The Court does not find NCG's argument persuasive. First, the Court finds that *Plaintiffs* are not seeking more for themselves than they are for the unnamed class members. Plaintiffs allege that they and the members of the class "are entitled to actual damages, statutory damages . . . , and reasonable attorney's fees and costs." (FAC, ¶ 183.) The FDCPA provides that in class actions, the named plaintiffs may recover statutory damages, in addition to their actual damages, "as the court may allow, but not

exceeding $1,000" and "such amount as the court may allow for all other class members . . . not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." *See* 15 U.S.C. § 1692k. This provision limits the discretion of the court in awarding statutory damages in excess of actual damages. The fact that the statute provides differential caps for named plaintiffs and other class members does not mean that Plaintiffs, in this lawsuit, are seeking more for themselves than for unnamed class members.

■ Second, even if Plaintiffs were seeking greater relief for themselves under their FDCPA claim, the Court finds that it would be irrelevant to the application of the exception to the anti-SLAPP statute. It is undisputed that California's anti-SLAPP law is inapplicable to federal claims brought in federal court. *See Hilton v. Hallmark Cards,* 580 F.3d 874, 881 (9th Cir.2009) (stating: "the anti-SLAPP statute does not apply to federal law causes of action" and "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims"). If the anti-SLAPP statute does not apply to Plaintiffs' FDCPA claim, then it would be inconsistent and contradictory to rely on statutory damages sought under the FDCPA claim to find that the exception to the anti-SLAPP statute is barred.[3] Therefore, the Court finds that the public interest exception is applicable here and, thus, the Court DENIES NCG's motion to

---

**3.** The Court finds that NCG's reliance on *Club Members for an Honest Election v. Sierra Club,* 45 Cal.4th 309, 86 Cal.Rptr.3d 288, 196 P.3d 1094 (2008) is misplaced. In *Club Members,* the court held that the exception applies only when the entire action is brought in the public interest. *Id.* at 312, 86 Cal.Rptr.3d 288, 196 P.3d 1094. However, notably, the plaintiffs in *Club Members* brought only state-law claims. *Id.* at 314, 86 Cal.Rptr.3d 288, 196

P.3d 1094. The California Supreme Court found that the appellate court misconstrued the phrase "public interest" in the exception by giving this phrase the same expansive meaning it has under section 425.16. The issue of whether a differential cap on statutory damages only available under a federal claim would preclude the application of the exception was not before the court.

strike pursuant to California Code of Civil Procedure 425.16.

## CONCLUSION

For the foregoing reasons, the Court (1) DENIES NCG's motion to dismiss and Schreck and Stohlton's joinder in that motion; (2) DENIES NCG's special motion to strike pursuant to California Code of Civil Procedure 425.16, along with LLCP's and Schreck and Stohlton's joinder in that motion; (3) DENIES Schreck and Stohlton's motion to strike pursuant to Federal Rule of Civil Procedure 12(f); and (4) GRANTS IN PART AND DENIES IN PART LLCP's motion to dismiss and Schreck and Stohlton's joinder in that motion. The Court GRANTS the motion and joinder with respect to Plaintiffs' misrepresentation claims and DENIES the motion and joinder with respect to the remainder of Plaintiffs' claims. The Court HEREBY provides Plaintiffs leave to amend to allege a factual basis for the dismissed misrepresentation claims. Plaintiffs shall file an amended complaint, if any, within twenty days of the date of this Order. If Plaintiffs do not file a second amended complaint, Defendants shall file an answer within twenty days thereafter. If Plaintiffs file a second amended complaint in accordance with this Order, Defendants shall either file answers or move to dismiss within twenty days of service of the amended complaint.

**IT IS SO ORDERED.**